**UNITED STATES et al. v. ONAN et al.**
(two cases).

Nos. 14234, 14291.

United States Court of Appeals
Eighth Circuit.

June 20, 1951.

Rehearing Denied July 11, 1951.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■

**4**

H. R. Love and H. M. Roberts present on behalf of appellants.

Benedict Deinard, Minneapolis, Minn. (R. H. Fryberger, Minneapolis, Minn. was with him on the brief), for appellees.

Before GARDNER, Chief Judge, and THOMAS and JOHNSEN, Circuit Judges.

GARDNER, Chief Judge.

These were actions brought in the name of the United States of America by appellants H. M. Roberts and H. R. Love as informers against David W. Onan and various other companies and individuals to recover for alleged fraud in connection with termination claims against the United States. There was originally but one action and the complaints in the two actions differ in no material matter. The complaints were not printed by appellants but the complaint in the first suit filed is reproduced in a supplemental record by appellees. The complaint is very elaborate and alleges among other things: "That the defendants, have by their acts and by said false, fictitious and fraudulent statements, representations and claims, caused the United States, and an agency thereof, to sustain damages, in the amount of $1,256,-536.00, by the doing and committing of the acts and the concealment of material facts set forth herein." It demands judgment for a total of $2,525,072.00, together with costs, expenses and attorneys' fees "to be taxed and added, in accord with the provisions of Section 232, Title 31 of the United States Code Annotated; and for an award out of the judgment, or proceeds of any settlement effected of this suit, to the persons bringing the same, in the name of the United States, and carrying the same on to conclusions, judgment, settlement and termination according to the laws made and provided * * *."

The actions have not reached final judgment but the appeals are from two orders which will hereafter be more fully described.

The actions are based on Section 231, Title 31, United States Code Annotated, which fixes liability for making false claims against the government. Appellants are laymen but in bringing and prosecuting these suits have acted as attorneys for the United States in whose name the suits were brought. They were not named as parties plaintiff although they are named as appellants.

On April 13, 1950, appellants filed a complaint in the Fourth Division of the District Court. On June 12, 1950, within the sixty days allowed by statute, the United States filed its appearance and specifically reserved all of its rights to carry on the litigation. On September 6, 1950, appellants filed an affidavit of prejudice against Judge Nordbye, alleging that in the absence of the appellants he had conferred with counsel for certain appellees concerning interrogatories previously filed by appellants. Thereafter, on September 13th and 19th, 1950, appellants had garnishee summons served on five large banks in Minneapolis, thereby impounding large sums of money belonging to appellees, and on September 19th caused summons and complaint to be served on certain appellees. The garnishee summons was not issued by the clerk of the trial court but the appellants signed the name of the United States thereto as plaintiff, under the practice in Minnesota. On application of the appellees the court issued two orders to show cause why the service of summons in garnishment should not be quashed and the appellants adjudged in contempt of court. On September 28, 1950, after holding that the affidavit of prejudice filed by appellants was insufficient and untimely, the court after hearing entered an order quashing both the garnishee summons and the service of summons on appellees, directing that action be carried on solely by the United States until such time as it should evidence its intention not to proceed, and enjoining appellants from further intermeddling in the case during the time reserved to the United States to proceed with its prosecution.

In the meantime, and on September 7, 1950, without notice to the United States or appellees, appellants commenced an action

in the third division of the trial court by filing a complaint which is a duplicate of that previously filed in the fourth division, except for immaterial deviations in the names of certain of the defendants, and on October 20, 1950, appellants again caused garnishee summons to be served on various banks, impounding deposits of appellees amounting to hundreds of thousands of dollars. Appellees first learned of the pendency of the second suit when they secured copy of the garnishee summons on October 20, 1950. The commencement of the second action was concealed from the trial court at the hearing of September 28th. On October 30, 1950, on motion of appellees, the court entered an order to show cause returnable November 3, 1950, calling on appellants to show cause why the actions should not be consolidated, the garnishee summons issued in the second action quashed, and the appellants adjudged in contempt of court on the ground that the commencement of the second suit and the issuance of garnishee summons therein were colorable evasions of the prior orders of the court. Appellants were personally served with this order to show cause.

At the hearing of November 3, 1950, appellants personally appeared. On November 8, 1950, the court entered its order consolidating the two cases, quashing the garnishee summons dated October 30, 1950, enjoining appellants from taking any further steps in connection with the litigation until the United States evidenced its intention not to proceed with the prosecution thereof (permitting, however, appellants to present motions for leave to carry on the litigation), adjudging appellants in contempt of court, and ordering them to pay a fine of $2500.00 to the clerk of the court, to be paid over to the moving defendants in reimbursement of the damages suffered by them, or in default of payment to be committed to jail until the fine be paid. On November 6, 1950, appellants filed demand for jury trial of the contempt of court orders to show cause. In this demand it was alleged that appellant Roberts had not been served with any of the show cause orders.

On November 16, 1950, the United States filed a statement withdrawing its prior appearance. Appellants, having failed to pay the fine imposed, were committed to jail where they were confined for a period from December 4 to December 22, 1950, when the commitment order was suspended. The appeal challenges the validity of the order of September 28, 1950, and likewise challenges the validity of the order of November 8, 1950.

Appellees interposed the threshold contention that neither the order of September 28, 1950, nor that of November 8, 1950, is appealable. Certain features of the orders would not, if embodied in a separate order, be reviewable on appeal from the order but the orders contain injunctional features which we think make them appealable. United States v. Baker-Lockwood Mfg. Co., 8 Cir., 138 F.2d 48.

An affidavit of prejudice having been filed against Judge Nordbye, it is contended that he automatically became disqualified and was without authority to enter the orders appealed from. As this question goes to the validity of both of the orders, we shall first consider it. As has been noted, the affidavit of prejudice was filed September 6, 1950, but was apparently not called to Judge Nordbye's attention until the time set for hearing of the order to show cause which resulted in the order dated September 28th. A better understanding of the situation may be gathered by referring to certain proceedings which had been taken prior to the filing of this affidavit of alleged bias and prejudice.

The United States filed notice of appearance June 12, 1950. Thereafter, on July 29, 1950, and again on August 7, 1950, appellants applied to the court for an order authorizing them to carry on the action on the ground that the United States had failed to prosecute with due diligence. On August 9, 1950, Judge Nordbye overruled the motion and in doing so "ordered: that all further proceedings in this cause be stayed until the further order of the court." At the time of entering this order appellants were present, and the court in an oral opinion indicated that the government would require some time after its appearance to proceed in the prosecution of the

lawsuit. In the course of this opinion the court, among other things, said: "My understanding of the statute is that, if it appears that, taking into consideration these matters, the Government would have to give attention to, that within the six month period it did not make a sufficient showing of diligence in the prosecution of this suit, then the Court might find that there was a lack of due diligence, and then the Court could say, 'Well, in the interest of the public, the United States has fallen down on the job and the Court is going to turn this lawsuit over to the informer for prosecution.'"

The court further said in that oral opinion: "Furthermore, it seems to me that until we determine who is going to handle this lawsuit, whether you as the informers or the United States, that the service of the process and any steps taken in the furtherance of this lawsuit should be left to the United States until the Court has determined that it is no longer a proper party to proceed with the lawsuit."

It was following the entry of the order of August 9th that the affidavit of prejudice was filed, which the court held insufficient and untimely.

 Section 144, Title 28, United States Code, while providing for the filing of a timely and sufficient affidavit that the judge has "a personal bias or prejudice either against him or in favor of any adverse party," also provides that such affidavit shall be filed not less than ten days before the beginning of the term at which the proceedings are to be heard, "or good cause shall be shown for failure to file it within such time." The only basis for the charge of prejudice is that the Judge, in the absence of appellants, discussed with an attorney for appellees requirements relative to answering certain interrogatories filed by appellants. It is not alleged when this incident occurred. It appears from the record, however, that the interrogatories were filed May 6, 1950, and in the absence of any allegation as to when the conference occurred we are warranted in assuming that it occurred soon after the filing of the interrogatories, while the affidavit of preju-

dice was not filed until September 6, 1950, after the court entered its order of August 9, 1950, denying appellants leave to proceed with the prosecution of the action. While the facts alleged in the affidavit of prejudice must, for the purpose of the motion, be accepted as true, the reasons and facts forming the basis for the belief are of paramount importance and must give support to the charge of bias and prejudice. Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481; Foster v. Medina, 2 Cir., 170 F.2d 632; Hurd v. Letts, 80 U.S.App.D.C. 233, 152 F.2d 121. The allegations here point to no impropriety. So far as can be gathered from the affidavit the Judge may simply have answered some inquiry as to the proper procedure. It is to be observed that Section 144 provides that such an affidavit "shall be accompanied by a certificate of counsel of record stating that it is made in good faith." We have held that this phrase "counsel of record" means an attorney at law admitted to the bar of the court who has been counsel of record in the case. Currin v. Nourse, 8 Cir., 74 F.2d 273; Ex parte N. K. Fairbank Co., D.C., 194 F. 978. Neither of the appellants who signed the affidavit is a member of any bar. They are laymen, and while Section 232, Title 31, United States Code Annotated, provides that such suit "may be brought and carried on by any person," we do not think that Congress could have intended to authorize a layman to carry on such suit as attorney for the United States but must have had in mind that such a suit would be carried on in accordance with the established procedure which requires that only one licensed to practice law may conduct proceedings in court for anyone other than himself. While the Supreme Court has given this Section 232 a liberal construction, U. S. ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, it is unthinkable that Congress by this Act intended to license laymen to practice law. The practice of law is affected with a public interest and an attorney at law as distinguished from a layman, has both public and private obligations, being sworn to act with all good fidelity toward both his client and the court. Coun-

sel of record, as the term is used in Section 144, Title 28, United States Code, has an obligation which he owes to the court as well as to his client, and he owes a public duty to aid the administration of justice, to uphold the dignity of the court and respect its authority. Berman v. Coakley, 243 Mass. 348, 137 N.E. 667, 26 A.L.R. 92; Langen v. Borkowski, 188 Wis. 277, 206 N. W. 181, 43 A.L.R. 622; Fisher v. Pace, 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569. We think the affidavit of prejudice was wholly insufficient and untimely.

The order of September 28, 1950, is attacked largely on procedural grounds. Appellants interposed what they designate as objections to the sufficiency of the motion and notice for the hearing held September 28th. The motion for an order was in writing and complied with Rule 7(a) and (b), Federal Rules Civil Procedure, 28 U. S.C.A. The order to show cause was made returnable September 28th. While it is claimed that it was not personally served on appellant Roberts, this is contradicted by the return of service. It is also contradicted by the "opposition" filed by appellants the day before the hearing, which states that, "The orders to show cause, the notices and motions on the part of the defendants with accompanying papers were served upon the persons who brought this suit on September 27, 1950." In any event, there was a general appearance at the hearing by both appellants. So far as the order to show cause embodied a contempt proceeding it is to be observed that the part of the motion asking that appellants be adjudged to be in contempt was not heard on September 28th, and so far as appears has not been acted upon.

It is urged that the court erred in failing to require appellees to furnish a bond as a condition to the entry of the order of September 28th. No request for bond was urged by appellants at the time of the hearing or at the time of the entry of the order, nor in fact until November 30, 1950. The order was in effect a temporary stay of proceedings granted in the exercise of judicial discretion. The order of September 28th stayed proceedings by appellants until the United States should determine whether to prosecute the action. The requirement of security as provided by Rule 65(c), Federal Rules of Civil Procedure, was intended to protect against damage caused by the improvident issuance of an injunction in advance of full hearing. In the instant cases it is difficult to see how appellants could be injured because the United States had already made an appearance within the sixty days provided by Section 232, Title 31, United States Code Annotated, and hence, had six months within which to determine whether to prosecute the action. The court at a prior hearing on August 9, 1950, had already determined that there was no showing of lack of diligence. Unless appellants were wrongfully enjoined or restrained they could certainly suffer no damage and if it were error it would be error without prejudice unless the restraint were erroneous, which we think it was not. Swift v. Black Panther Oil & Gas Co., 8 Cir., 244 F. 20; Doyne v. Saettele, 8 Cir., 112 F.2d 155.

It is next urged that appellants had the sole right to control litigation by reason of the alleged failure of the United States to enter an appearance within sixty days after service. In support of this contention it is urged that the United States entered its appearance on June 13th and not on June 12th. This contention, however, is disproved by the docket entry. The appearance of the United States was made a matter of record June 12th and it appears that the sixty days time allowed by the statute for such appearance, properly calculated, did not expire until June 15th because service of notice of the commencement of the action on the United States Attorney was made by registered mail as provided by Section 232(b), Title 31, United States Code Annotated, and under Rule 6 (e) of the Federal Rules of Civil Procedure, three days must be added to the sixty days otherwise allowed for entering an appearance. The contention of the appellants is not only technical but wholly without merit, in fact or in law.

It is further argued that under Rule 12(h), Federal Rules of Civil Proce-

dure, appellees waived their right to claim defects in the service of garnishee or other summons because they failed to file an answer. But the record shows that the attempted service of summons was not made on appellees until September 19th, nor indeed on some of the appellees until September 25th, and they had twenty days thereafter in which to answer. Then too, appellees' motions challenged the right of appellants to prosecute the action or serve the summons and this was jurisdictional and would certainly be inconsistent with any acts on their part recognizing the validity of the summons. We think there was no error in entering the order of September 28, 1950.

■ On October 30, 1950, appellants, notwithstanding the order of September 28th, went into the third division of the court and again had garnishee summons issued and served. The order of September 28th was predicated on the right of the United States to a period of six months after its appearance to determine whether to prosecute the action. Right or wrong, this was the order of the court. On commencing the second action no notice was served on the United States and no opportunity given it to determine whether it desired to appear and take over the litigation. The issuance of garnishee summons without notice to the United States, was a colorable evasion of the order of September 28th, and also of the order of August 9th. It was a mere subterfuge by which appellants attempted to accomplish substantially that which they were enjoined from doing. High on Injunctions (4th Ed.) Sec. 1433; Craig v. Kelley, 311 Mich. 167, 18 N.W.2d 413.

■ It is now argued that appellants were not given proper notice of the contempt proceedings in which the order of November 8, 1950, was entered. Here, again, it is urged that appellant Roberts was not personally served with the order to show cause of October 30, 1950, charging appellants with contempt. Rule 5 of the local rules of the United States District Court for the District of Minnesota, provides that a copy of the order to show cause

"shall be served upon the alleged contemner personally." The marshal's return shows that Roberts was personally served and he, together with appellant Love, filed objections to the order to show cause which recites that, "Service of the motion was at noon, October 30, 1950," and the hearing is set in the notice thereof for nine o'clock a. m., November 3, 1950. This was actual knowledge and notice and in addition to this both appellants personally appeared at the hearing of November 3rd, without objection that the order to show cause was not duly served on Roberts. The objections then made contain no suggestion that the order to show cause was not duly served on appellant Roberts. This general appearance without objection to the service precludes them from now complaining that they were not duly served with process. That contention seems to have been an afterthought.

■ It is next argued that the filing of a notice of appeal from the order of September 28th ousted the trial court of jurisdiction. Appellant Love applied to this court by motion dated October 18, 1950, to stay proceedings of the trial court. Two days later appellants issued garnishee summons in one of the pending cases and appellees in their return dated October 30, 1950, urged this court to permit the trial court to proceed so that they might be protected against further abuse of process by the appellants. We denied appellants' motion for stay of proceedings. In passing on the motion for stay we recognized that the trial court retained jurisdiction pending the appeal to adjudge appellants in contempt for action taken by them during the pendency of the appeal which constituted a violation of the order of September 28th. As said by the Supreme Court in Ex parte National Enameling & Stamping Co., 201 U.S. 156, 26 S.Ct. 404, 406, 50 L.Ed. 707: "The case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken, unless otherwise specially ordered." See, also: Foote v. Parsons Non-Skid Co., 6 Cir., 196 F. 951. The trial court had jurisdiction to preserve the status quo of the subject matter pending the ap-

peal, "including power to take cognizance of a violation of its injunction." Merrimack River Saving Bank v. City of Clay Center, 219 U.S. 527, 31 S.Ct. 295, 55 L.Ed. 320.

It is urged that the order of November 8, 1950, deprived appellants of their constitutional right to a jury trial. Demand for jury trial was not made until three days after the hearing but we think there was no right to a jury trial on the issues presented. Simon v. United States, 9 Cir., 62 F.2d 13; Donato v. United States, 3 Cir., 48 F.2d 142. Section 3691, Title 18, United States Code, makes provision for jury trials in contempt proceedings but expressly excludes any contempt committed in disobedience of an order "entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States." The statute has no application to civil contempt proceedings. Michaelson v. United States ex rel. Chicago & St. P. M. & O. R. Co., 266 U.S. 42, 45 S.Ct. 18, 69 L. Ed. 162. This proceeding is civil in nature. The punishment sought and meted out was wholly remedial. McCrone v. United States, 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108; Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172. This proceeding was instituted by counsel for appellees and not by the United States Attorney and it did not charge a criminal contempt, and Rule 42 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., has no application. It is to be observed that the order adjudging appellants in contempt awarded damages to appellees, clearly marking the proceeding as civil. Nye v. United States, supra. Neither is there any merit in the contention that the order violated the constitutional inhibition against imprisonment for debt. The power to impose a fine for civil contempt is well settled. United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884; Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797; Hurd v. Hurd, 63 Minn. 443, 65 N.W. 728. Nor does such imprisonment constitute cruel or unusual punishment. The appellants while imprisoned, were shortly released upon showing that confinement would cause undue hardship.

It is finally urged that there is no evidence to support the order fining appellants $2500.00. There was testimony at the hearing of November 3, 1950, that one of the defendants had on deposit in the garnisheed banks more than $425,000.00 on October 20, 1930, and that the garnishment of that date had interfered with the banking operations and injured the standing of defendants and had caused at least one large contractor to send his chief engineer to Minneapolis to inquire about the garnishment. The precise amount of actual damage was doubtless not susceptible of determination but the flagrant and wanton abuse by appellants of judicial process in issuing and serving these garnishee summonses on the various banks in which defendants had large deposits subjected defendants to substantial expense in retaining counsel and in obtaining an order quashing the summonses. The evidence was all before the trial court and there was no evidence offered by appellants to the contrary. We think a fine of $2500.00 as reimbursement for the damages suffered by appellees was sustained by substantial evidence.

We have considered all of the other contentions of appellants and are of the view that they are wholly without merit.

The orders appealed from are therefore affirmed.