ASSOCIATED ORCHESTRA LEADERS OF GREATER PHILADELPHIA, Marty Lahr, Joel Charles, Jay Jerome, Jack Lewis and Abe Neff

v.

The PHILADELPHIA MUSICAL SOCIETY, LOCAL 77, OF the AMERICAN FEDERATION OF MUSICIANS, the American Federation of Musicians, Charles Musumeci as President of Local 77, A. A. Tomei as Secretary of Local 77, Don Diogenia as Treasurer of Local 77, and Herman Kenin as President of the American Federation of Musicians.

Civ. A. No. 30732.

United States District Court
E. D. Pennsylvania.

April 6, 1962.

Martin Greitzer, Philadelphia, Pa., Godfrey P. Schmidt, New York City, for plaintiff.

Meranze, Katz & Spear, Philadelphia, Pa., Van Arkel & Kaiser, Washington, D. C., for defendant.

JOSEPH S. LORD, III, District Judge.

The complaint in this case approaches the incredible. It contains four counts and 98 paragraphs. Many of the paragraphs in one count are incorporated by reference in one or more of the other counts, so that analysis of the complaint demands painstaking re-shuffling of its 36 pages. It is indeed a veritable compendium of prolixity. Plaintiffs' brief is no better. It is full of meaningless strings of citations and is obviously copied in large part from some other brief, without even an attempt to adapt its form to the case before us. We decry this sort of advocacy, and pass now to the merits.

Plaintiffs are five individual orchestra leaders and an unincorporated association, to which all of the individual plaintiffs belong, Associated Orchestra Leaders of Greater Philadelphia (Associated).[1] Defendants are the American Federation of Musicians (AFM), its Local 77, and several individuals as officers of the Local and of AFM. All of the individual plaintiffs are also members of Local 77, and for their engagements employ only union "sidemen" under terms established by the Union.

The action is purportedly brought as a class action under F.R.Civ.P. 23(a), 28 U.S.C., and contains four separate counts. The first seeks to enjoin certain payments, a 1% "tax" and a 10% "traveling surcharge" which plaintiffs are obliged to make to defendants, and which are alleged to be in violation of § 302 of the Labor Management Relations Act (LMRA), as amended, 29 U.S.C.A. § 186. The second cause of action complains of the fixing of minimum prices and wages for all musicians by defendants, and requests an injunction against such action and against any reprisals which may be directed against plaintiffs for challenging defendants' actions. Jurisdiction allegedly arises under the Sherman Act, 15 U.S.C.A. § 1 et seq. and Clayton Act, 15 U.S.C.A. § 12 et seq. under Titles I and VI of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 401 et seq. and under §§ 302(e) and 303(a) and (b) of the LMRA, 29 U.S.C.A. §§ 186(e),

1. An individual plaintiff and a corporate plaintiff which engaged in producing musi-cal shows have been dismissed by stipulation.

187(a, b). The third cause of action complains of union-imposed discipline on plaintiffs in violation of Title I of the Labor-Management Reporting and Disclosure Act. Injunctive relief is sought. The fourth cause of action alleges jurisdiction under the Sherman and Clayton Acts and recites monopolization on the part of defendants in combination with certain orchestra leader-employers. Plaintiffs ask for an injunction and damages.

Defendants have moved to dismiss. They assert initially that this is not a proper class action[2] because the complaint shows on its face that plaintiffs do not adequately represent the class, as is required by F.R.Civ.P. 23(a). The interests of the plaintiffs are said to be directly hostile to those of other members of the class.

■ The complaint is framed as a spurious class action under F.R.Civ.P. 23(a) (3). It alleges that there are common questions of law and fact and common relief is sought. Although some doubt has been expressed elsewhere,[3] the rule in this Circuit is that adequacy of representation must be shown in a spurious as well as in other types of class actions: Pennsylvania Co. for Insurances, etc. v. Deckert, 123 F.2d 979 (C.A. 3, 1941); Zahn v. Transamerica Corporation, 162 F.2d 36, 172 A.L.R. 495 (C.A. 3, 1947); Rio Haven, Inc. v. National Screen Service Corp., 11 F.R.D. 509 (E.D.Pa.1951).

■ In this case, the inadequacy of representation is apparent. The class appears to consist of orchestra leaders who are members of defendant Local 77. Portions of the complaint allege a conspiracy between defendants and other orchestra leaders, and although it is not spelled out, these other orchestra leaders are apparently also members of Local 77. (Defendants presumed that these were the facts in their brief and in argument, and plaintiffs did not attempt to rebut this, or even mention it).

In a similar factual situation, the members of the class being sharply divided on the question involved in the litigation, the Third Circuit held that "it would be absurd to say that the leaders of one faction in the internecine struggle could adequately represent the whole membership." Giordano v. Radio Corporation of America, 183 F.2d 558, 560 (C.A. 3, 1950). Although the Court was there considering a true class action, the holding is equally applicable here.

■ The presence of the association as a plaintiff does not cure the defect. Associated is alleged to be composed of orchestra leaders who are members of defendant unions. But an unincorporated association has no standing to assert the rights of its members. Farmers Co-op. Oil Co. v. Socony-Vacuum Oil Co., 133 F.2d 101 (C.A. 8, 1942). Here the class is not even limited to members of the association, but comprises all orchestra leaders who are members of Local 77. The association being but one faction of the class, adequate representation of the class by the association is clearly lacking.

The complaint must be dismissed as a class action, but this, we think, is not the end of the matter. In Giordano, supra, the plaintiff purported to bring the action on behalf of himself and fifteen other members of the union who allegedly were about to be wrongfully expelled,

2. Paragraph 20 of the complaint alleges: "Plaintiffs bring this action for themselves and for all members (so numerous as to make it impractical to bring them all before the Court) of defendant, LOCAL 77, as well as for all orchestra leaders who are members of the FEDERATION and who are similarly situated; and this complaint raises common questions of fact and law concerning common rights; and a common relief is sought herein; and the object of this action is the adjudication of claims which do or may seriously affect the specific property rights and businesses of plaintiffs and of the said class; and this class action is authorized by Rule 23 of the Federal Rules of Civil Procedure."

3. 3 Moore's Federal Practice, ¶ 23.07 [1], p. 3426; Nagler v. Admiral Corporation, 248 F.2d 319 (C.A. 2, 1957).

none of whom had intervened. After holding that the suit could not be maintained as a class action, the Court said (183 F.2d at p. 561):

"* * * It must be concluded, therefore, that the suit, if it may be entertained at all, must be regarded as brought by the plaintiff for his own benefit solely.

"This brings us to the decisive question, whether the jurisdictional amount of $3,000 is involved. * *"

We deem it incumbent upon us, then, to determine whether this action can be retained if it is regarded as the assertion of individual claims joined in one action. In Zachman et al. v. Erwin et al., 186 F.Supp. 681 (S.D.Tex., 1959) the Court said, at page 689:

"* * * The ability of other persons similarly situated to intervene without regard to jurisdictional limitations applicable to the original parties is the raison d'etre of the spurious class suit, since Rule 20(a) furnishes authority for joinder of parties where a common question of law or fact is involved, subject to jurisdictional restrictions as to diversity of citizenship and amount in controversy. By virtue of 15 U.S. C.A. § 77(v), however, the Securities Act confers jurisdiction of this action upon the court irrespective of the amount in controversy or the citizenship of the parties. * * *"

So here, jurisdiction in this case depends upon the invocation of federal laws. But at this point, we do not know whether federal laws have been violated as to each individual plaintiff and, if so, which laws and the nature of the asserted violation. This can only be determined by the examination of factual, rather than conclusionary, averments of the complaint. Such averments are, of course, lacking in this complaint brought, as it was, mistakenly as a class action. Leave will be given to amend to allege individual claims on behalf of the named plaintiffs and others who desire to join and who are named in the amended complaint. We note here that one of defendants' grounds for dismissal is that the complaint is not a "simple, concise, and direct" statement of the facts: F.R.Civ.P. 8(e) (1). We thoroughly agree with defendants' position in this regard, although the action we have taken makes it unnecessary to decide the point. Suffice it to say, that if the complaint is amended, we trust we will need not again consider this ground.

The parties have already argued their positions on the other grounds of defendants' motion to dismiss. Leave to amend would be meaningless if it appeared that defendants' substantive points are correct and that plaintiffs, even as individuals, would be entitled to no relief. We will therefore consider the other points raised.

The first count challenges certain payments which orchestra leaders are required to pay to the unions: a 1% tax on all engagements which is deducted from the pay of all members of the orchestra, including the leader, and a 10% tax on engagements out of the jurisdiction of the Local, which is added to the price of these engagements. These are asserted to be in violation of § 302 of the LMRA which prohibits payments by employers to representatives of their employes.

In Carroll v. American Federation of Musicians of United States & Canada, 295 F.2d 484 (C.A. 2, 1961), the district court refused a temporary injunction against the exaction of these precise payments. The Court of Appeals reversed, stating at page 487:

"* * * It follows that, on the showing before the District Judge, the tax and the surcharge violated § 302(a) [1] (footnote omitted) unless they came within one of the exceptions of § 302(c). The only exception in any wise pertinent is subsection (4) which permits an employer to deduct from wages money constituting 'payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account.

such deductions are made, a written assignment * * *.' From what we have before us it would seem indeed that the 'tax' imposed by the Local's by-law may have constituted the payment of membership dues although not denominated as such; however, defendants did not bring themselves within the exception since there were no written authorizations. Normally the 10% 'traveling surcharge' is divided by the International three ways: 4/10ths goes to the local in whose jurisdiction the engagement was played, 4/10ths is retained by the International, and 2/10ths is paid to the members who played the engagement. This distribution to the local and to the employees themselves would seem quite clearly not to constitute membership dues. We are unable to determine from the material before us whether the payment to the International would be such but in any event no written authorizations were furnished. * * *"

█ Defendants now say that the 1% and 10% are merely the *leaders'* dues and, since they are paid by the leaders themselves, no written authorization is required to be within the exception of § 302(c) (4). Evidence would be required to support the accuracy of defendants' contention that these payments are the leaders' dues; it is certainly nothing which we can determine on a motion to dismiss. Even if defendants are correct, no explanation is given for the union requirement that a leader deduct 1% from the pay of a sideman. If these are dues, they certainly appear to be at least partially the dues of the sideman. Deduction by an employer of union dues from an employe's pay is an exception from § 302, but only where a written authorization is in effect. There is no showing here of any such authorization. Defendants' motion as to Count I will be denied.

██ Counts II and IV complain of the imposition upon plaintiffs, without bargaining, of price scales and wages, and of economic coercion to enforce the union decrees. Failure to bargain alone would of course be a matter within the primary jurisdiction of the National Labor Relations Board. This court is without power to enjoin unfair labor practices *per se*, and if this alone were in the complaint it would be proper to dismiss: Amalgamated Ass'n, etc. v. Dixie Motor Coach Corp., 170 F.2d 902 (C.A. 8, 1948); Haspel v. Bonnaz, Singer & Hand Embroiderers, etc., 112 F.Supp. 944 (S.D.N.Y.1953).

██ However, in both counts there are allegations of conspiracy between defendant unions with employers to the injury of plaintiffs. Union exemption from the anti-trust laws is lost and the union becomes subject to injunctive relief where it combines with employers to restrain competition, this notwithstanding the fact that the union is acting to further its members' interest as wage earners. Allen Bradley Co. v. Local Union No. 3, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945). It appears from the state of the record before us that employer-leaders are members of defendant unions, that minimum prices for engagements for leaders as well as sidemen are set, and that defendant unions have power to enforce such minimums by a refusal to supply sidemen to work for leaders who do not comply with the minimums.

We cannot say that the complaint is so insufficient as to be subject to dismissal. The Allen Bradley case has been applied to labor unions where businessmen became members of such unions: United States v. Los Angeles Meat & Provision Drivers Union, 196 F.Supp. 12 (S.D.Cal., 1961); United States v. Fish Smokers Trade Council, Inc., 183 F.Supp. 227 (S.D.N.Y.1960). From the record before us, this case is not dissimilar to those cited, and defendants' motion must be denied.

We note in passing that plaintiffs have also alleged jurisdiction of Count II under Titles I and VI of the Labor-Management Reporting and Disclosure Act and under §§ 302(e) and 303(a) and

(b) of the LMRA. The applicability of these sections to the facts alleged is not entirely clear to us, nor has anything we have heard in argument or read in plaintiffs' brief elucidated the matter. However, in light of our view of the Sherman Act charge which requires denial of the motion to dismiss, discussion of these other grounds is unnecessary.

The remaining substantive charge of the complaint in Count III alleges a denial to plaintiffs of rights guaranteed to them by §§ 101 and 609 of the Labor-Management Reporting and Disclosure Act. It is charged that several of the plaintiffs have been disciplined and fined without having been served with specific written charges and without a fair hearing. Plaintiffs allege that they have not appealed such discipline within the unions, as such action would be futile. Plaintiffs further allege denial of equal rights in the union, failure to allow plaintiffs to meet and assemble or to express their views at union meetings, and obstruction of access of plaintiffs to the courts and the NLRB. It is asserted that denial of these rights is enforced by threats of discipline and by economic coercion, such as failure to provide sidemen for engagements.

The basis of the motion to dismiss is that plaintiffs, by their own assertion, have failed to exhaust internal union remedies as required by the union by-laws. Section 301(a) (4) of the Act, it is contended, preserves the right of a union to require such exhaustion before initiation of any action. Defendants assert that even if futility is an exception to this rule, plaintiffs are required to allege facts in support of this conclusionary statement, and their failure to do so renders the pleading insufficient to justify an exception to the general requirement of exhaustion.

Defendants' position may be well taken with respect to internal appeals from the fines which were allegedly imposed after an improper hearing. However, the applicability of any internal union procedure to remedy alleged economic coercion of plaintiffs, as, for ex-ample, failure to supply sidemen, is not clear. Such union action, if it occurred, does not appear to be the result of any appealable union proceeding. Nor have defendants pointed out to us any procedure specified in its constitution or by-laws whereby members aggrieved by such union action could secure relief.

"When asserting what is clearly a violation of a federal statute, a union member should not be required to first seek out remedies which are dubious. Only resort to those expressly provided in the union's constitution or those clearly called to his attention by the union officials should be demanded of him." Detroy v. American Guild of Variety Artists, 286 F.2d 75, 80 (C.A. 2, 1961).

On the present state of the record we cannot say that plaintiffs' failure to exhaust internal remedies is of such a nature as should constitute a bar to their proceeding in this action. Defendants' motion to dismiss Count III is denied.