Jules BENNER et al.,

v.

The PHILADELPHIA MUSICAL SOCIE-TY, LOCAL 77, OF the AMERICAN FEDERATION OF MUSICIANS, American Federation of Musicians, Charles Musumeci as President of Local 77, A. A. Tomei as Secretary of Local 77, Don Diogenia as Treasurer of Local 77, and Herman Kenin as President of the American Federation of Musicians.

Civ. A. No. 30732.

United States District Court
E. D. Pennsylvania.

Sept. 4, 1964.

See also D.C., 32 F.R.D. 197.

Meranze, Katz, Spear & Bielitsky, by Bernard N. Katz, Philadelphia, Pa., Van Arkel & Kaiser, by Henry Kaiser, Washington, D. C., for plaintiffs.

Irvin J. Kopf, Philadelphia, Pa., Godfrey P. Schmidt, New York City, for defendants.

JOSEPH S. LORD, III, District Judge.

On January 15, 1962, I entered a temporary restraining order as follows:

"AND NOW, this 15th day of January, 1962, with the consent of counsel for the parties in the above captioned matter, it is hereby ordered by the Court that the restraining order issued on January 5, 1962 shall be modified to cover only the below noted acts and shall be extended until January 30, 1962 or such other time as a hearing may be scheduled. Defendants are enjoined from the following acts:

"1. Visiting economic reprisals or other sanctions or penalties upon plaintiffs for failure to collect the local 'tax'.

"2. Visiting economic reprisals or other sanctions or penalties upon plaintiffs for failure to collect the 'surcharge'.

"3. Visiting economic reprisals or other sanctions or penalties upon plaintiffs for bringing the instant action or for bringing the unfair labor practice charges referred to in the instant Complaint before the National Labor Relations Board."

There was then, and still is, pending in the federal courts in New York law suits involving the same questions that were before me, and rather than litigate simultaneously in two districts the temporary restraining order here was continued in force with the consent of the parties. F.R.Civ.P. 65(b). There is now before me a motion that the defendants be adjudged in contempt for violation of the order of January 15, 1962. I have already ruled orally from the bench that there are no violations of sections 1 and 3 of the order, so that we are now concerned only with an alleged violation of section 2.

The background of that part of the order is this:

Before January 1, 1964, whenever an orchestra traveled for a single engagement into the jurisdiction of a local other than its own, the American Federation of Musicians, i. e., the national union, required the leader of that orchestra to collect and pay to the American Federation of Musicians a "traveling surcharge" of 10% of the prevailing scale of the Local whose jurisdiction was invaded. The American Federation of Musicians, in turn, distributed the monies so received, 40% to the invaded Local, 40% to the American Federation of Musicians

and 20% to the "sidemen", i. e., the members of the orchestra other than the leaders. In Carroll v. American Fed. of Musicians of United States & Canada, 295 F.2d 484 (C.A.2, 1961), the court held that the single engagement leader was an employer; that the payment of the surcharge to the American Federation of Musicians was a payment by an employer to a union, a practice forbidden by § 302 of the Labor Management Relations Act unless it fell within a specific exception in that section; that it was not so excepted and hence was illegal. Cf. Associated Orchestra Leaders of Greater Philadelphia et al. v. Philadelphia Musical Society, Local 77, of American Federation of Musicians et al., 203 F.Supp. 755, 758 (E.D.Pa.1962). Thus, the intendment of the order was to prevent sanctions or reprisals by the union against the leaders for failure by the latter to make payment which violate § 302, and to prevent employment by the union of alternative means of collection which violate § 302.

The American Federation of Musicians has now sent letters to the plaintiff orchestra leaders, of which the following is typical:

"Prior to January 1, 1964, you performed 'miscellaneous traveling engagements' as defined in Article 15, of the A. F. of M. By-Laws, on the dates and at the place listed on the attached sheet.

"You have withheld from members of the Federation who performed on these engagements, and retained for yourself, the amount of Traveling Surcharge to which these members were entitled as part of their minimum wage.

"Our computation, made in accordance with Article 15, Sections 12, 13 and 14 of the A. F. of M. By-Laws (1962 Edition), indicates that you have retained and presently owe to these members the total amounts listed beside each traveling engagement.

"You are therefore requested to comply forthwith with the following:

"1. *For each engagement listed* deliver to the International Treasurer:

"(a) a full and complete list of the names, addresses, locals, and, except for Canadian engagements, the Social Security numbers of each and every Federation member who performed on each such engagement; and

"(b) your remittance by check or money order in favor of each such member of his share of the total amount which you have failed to pay to such member.

"2. *For each traveling engagement not listed on the attached sheet* which you performed during the five year period expiring December 31, 1963, and in connection with which you have retained the amount of the Traveling Surcharge, deliver to the International Treasurer:

"(a) a full and complete statement stating the conditions under which each such engagement was performed, the date and place of performance, the hours of the engagement, the names, addresses, locals and, except for Canadian engagements, the Social Security number of each and every Federation member who performed on each such engagement, together with the amount of the Traveling Surcharge you withheld for each such engagement from each such member; and

"(b) your remittance by check or money order in favor of each such member of his share of the total amount which you have failed to pay to such member.

"Your immediate response is requested and expected."

■ The record is barren of any evidence that defendants have invoked any "economic reprisals or other sanctions or penalties upon plaintiffs for failure to collect the surcharge." However, plaintiffs contend that these letters are a mere subterfuge for avoiding the strictures of section 2 of the January 15 order, and hence that defendants should be adjudged in contempt. A heavy burden of proof rests upon a party urging contempt to show the facts establishing the contempt by clear and convincing evidence. Washington et al. v. Central of Georgia Railway Company et al., 174 F.Supp. 33 (M.D.Ga.1958); Kansas City Power & Light Co. v. N. L. R. B., 137 F.2d 79 (C.A.8, 1943).

■ For aught that appears in the letters directed to plaintiffs, they are nothing more than an effort by the union to collect for its members certain monies which the union says are owed to the members by their employers. There is nothing in § 302 that would make such effort illegal. It is worthy of note that in the Carroll case, supra, the court said in footnote 1, page 487 of 295 F.2d:

"This is subject to possible qualification with respect to so much of the 10% 'traveling surcharge' as ultimately went to the performers themselves, with the International acting only as a conduit, a question we find unnecessary to decide."

■ Certain letters to sidemen were admitted into evidence. The following is typical:

"It has been reported you performed miscellaneous engagements on a traveling basis as defined in Article 15 of the A. F. of M. By-Laws, prior to January 1, 1964 as a sideman of the Bill Shiner Orchestra on the dates and at the places listed on the attached sheet.

"Your share of the 10% Traveling Surcharges on these particular engagements total $211.69. You are expected to remit 9/10 of this amount, $169.35.

"It is respectfully requested you give this your prompt attention."

Plaintiffs urge that these letters show an intention on defendants' part to continue to exact indirectly an illegal payment from the leaders to the union. I do not so construe the union's action. It is not unreasonable, and certainly not illegal, for a union to see to it that its members receive what is coming to them. The method employed here is in no way prohibited by § 302. If, as the union demands, the checks were made payable to the sidemen, there is no showing that they, or any of them, will acquiesce in the union's request for 9/10ths of the money. There is no showing that if they do agree such agreement would not be a purely voluntary contribution by a member of his union. If any sidemen should agree to turn over part of *his* money to the union that is a matter between the union and its members,—a matter which § 302 does not touch. Furthermore, from the letters addressed to the sidemen, the inference is strong that any union action to recover 9/10ths allegedly due it would be against the sidemen and not against the employers. If the union succeeded the money would come to it from the sidemen and not from the employer-leader.

■ A tangential argument is made that the sidemen were never entitled to receive the 10% surcharge, and therefore this constitutes a unilateral wage increase without collective bargaining. This may be, but, if so, it is a matter not within our jurisdiction, but within the exclusive jurisdiction of the National Labor Relations Board. Associated Orchestra Leaders of Greater Philadelphia et al. v. Philadelphia Musical Society, Local 77, of American Federation of Musicians et al., 203 F.Supp. 755, 759 (E.D.Pa.1962).

The motion to adjudge defendants in contempt of the order of January 15, 1962, is denied.