**UNIVERSAL ATHLETIC SALES CO.**

v.

**Larry SALKELD et al.**

**Civ. A. No. 71-1113.**

United States District Court,
W. D. Pennsylvania.

May 24, 1974.

See also, D.C., 357 F.Supp. 905.

Robert D. Yeager, Pittsburgh, Pa., Lewis M. Dalgarn, Los Angeles, Cal.

Thomas H. Murray, Lawrence Zurawsky, Pittsburgh, Pa., Larry Salkeld, Robert A. Galanter, Pittsburgh, Pa.

MEMORANDUM AND ORDER HOLDING DEFENDANTS SUPER ATHLETICS CORPORATION AND S. DAVID BRODSKY IN CIVIL CONTEMPT.

KNOX, District Judge.

On April 13, 1972, this court issued a preliminary injunction holding that certain wall charts circulated by the defendant in connection with the sales of

its gymnasium exercise equipment were in violation of plaintiff's copyright on such charts.[1] Matters concerning the equipment itself and patents with respect thereto are the subject of a separate suit at Civil Action No. 71–166. There is presently before the court a petition to hold two defendants in contempt for violation of the injunction.

The preliminary injunction was conditioned upon plaintiff's giving bond in the sum of $5,000. The bond in question was presented to the Clerk's Office of this court on April 21, 1972, at approximately 3:30 p. m., a Friday, when this member of the court had left for Erie to transact business at the Erie Federal Courthouse. As a result, the bond itself was not approved by the court until Monday morning April 24, 1972.

The testimony with respect to the alleged contempt is conflicting and contradictory, although two violations of the injunction involving distribution of the wall charts after the injunction was issued are rather clearly proved. One of these was admitted by the defendants and the other proved by testimony of an impartial witness which the court finds credible. Plaintiffs in addition contend that, based upon the testimony of defendant Larry Salkeld, approximately four to five hundred other wall charts were distributed to dealers and customers following the entry of the order for preliminary injunction on April 13, 1972. The defendants, on the other hand, admit only one such mailing of a wall chart and dispute even the other one, a distribution to a high school in the vicinity of Rochester, New York on April 21, 1972.

One legal question has caused the court some trouble, that is, the question of the effective date of this injunction. Can defendants be held in contempt for any violations or distributions of the wall charts which occurred prior to April 24, 1972, when the bond accompanying the injunction was approved?

It is obvious under Rule 65 of the Federal Rules of Civil Procedure that the bond was a necessary condition for the issuance of the injunction and on the face of things one would consider that the injunction was not effective until its terms were complied with, that is the bond was filed and approved and that the defendants could not be held in contempt for any violations which occurred before that date. (See 43 C.J.S. Injunctions page 928).

It is, however, also the rule that any violations after actual notice of an injunction justify holding a party for civil contempt regardless of the want of service. It is immaterial how a party acquires information as to the existence of the injunction. A party having knowledge of the same who deliberately violates it, although it has not yet been formally issued or served, is liable for contempt. See Radio Corp. of Amer. v. Cable Radio Tube Corp., 66 F.2d 778 (2d cir. 1933); See also United States v. Onan, 190 F.2d 1 (8th cir. 1951).

It is clear that this must be the rule because otherwise there would be races against the law to engage in as many violations of the injunction as possible before the marshal arrives with the papers for service. In this case, it is admitted that as soon as the injunction was ordered to be issued on April 13, 1972, defendants' counsel, Mr. Murray, having received a copy of the court order, immediately called the officers of defendant Super Athletics Corporation, Salkeld and Brodsky, and informed them of the issuance of the injunction (See page 12 of 8/23/73 and testimony of Salkeld 556). We therefore find that any violations of the court order after April 13, 1972, would subject the defendants to liability for civil contempt since they had actual notice of the same on that date.

The court is not convinced of the total credibility of any of the witnesses who have testified in connection with this contempt proceeding. It is noted

---

1. For complete copy of the preliminary injunction, see Appendix I attached to this order.

originally defendant Brodsky stated under oath dated August 1, 1972, in answer to interrogatory 1.53 in Civil Action No. 71–166 that no wall charts had been supplied after April 13, 1972, to any customers or dealers although previously they went with each machine. See plaintiff's contempt Exhibit 3. See also revised answers of August 31, 1972. On the other hand, it was later admitted by Mr. Brodsky on June 29, 1973, that a wall chart was distributed to Green High-School at Uniontown, Ohio, in May or June 1972. (Brodsky 481)

In addition to this, we find that the testimony of Mr. Walzer, Football Coach at Greece Olympia High School, near Rochester, New York, as to receipt of a wall chart from defendants' agents at the time of delivery of a machine to the high-school on April 21, 1972, is also true, he being an impartial and disinterested witness. (See Walzer's deposition, page 42)

Aside from this, while we are not impressed as the result of observation and the circumstances with the total credibility of defendant Salkeld, he having been discharged as President of Super Athletics on April 24, 1972, and being at odds with defense counsel, nevertheless, we find that there is considerable truth in his testimony. (See Salkeld depositions, pages 554–561) It appears that 2,000 of these wall charts had been printed, (see answer to interrogatory 1.5) and 800 to 1000 of these remained at the Super Athletics Office. He claims that the secretary was aware that they were on the premises and stored there. The whereabouts and distribution of this quantity of wall charts has never been satisfactorily accounted for by the defendants. It is inconceivable that this number would just disappear. Allowing for sales and copies to three distributors not over 150 would have been used up prior to April 13, 1972. If these wall charts were still there, it would be simple to produce them in court or allow inspection of them by plaintiff's attorneys. If they were destroyed, proof of their destruction should have been offered but instead the record is silent as to what happened to them and whether they are still in existence.

We find in this a partial corroboration of Salkeld's statement that a quantity of them were mailed out after the issuance of the injunction in an attempt to beat the service of the court order and to place them in the hands of every possible prospect, one was mailed out with each machine sold and that large quantities of between 10 to 25 per dealer were placed in the hands of dealers so that they could ignorantly pass them out to prospects or customers. But there were only three dealers.

As a result of the above, the court has had great difficulty in making a determination. Salkeld himself is not certain whether 400 or 500 were mailed out. As stated, the court is not impressed with his total credibility. Considering all the circumstances, bearing in mind the burden of proof resting on plaintiff and reducing all the claims to the minimum that have been proved, it is the court's conclusion at least thirty were mailed out or otherwise distributed which were damaging to the plaintiffs. This calculation is based largely on the list attached to revised answers to plaintiff's interrogatory 1.53 which shows twenty two machines were sold in the period April 13 through July 1, 1972. The new super trainer charts of defendant Super Athletics were received some time in July 1972 according to Carleo and some time in September according to Conn. We will take Carleo at his minimum word that thirty to fifty were sold in the interval between the injunction and receipt of the new charts.

We note that Salkeld was discharged as President of Super Athletics on April 24 and would therefore only know about the actual number of mailings between April 12 and 24. He says, however, that they were being mailed out up until the day he left. Defendant Brodsky claims that none were mailed but for reasons above set forth, we discount his testimony. Mrs. Humbert, the secretary of defendant and employee, of course, has an obvious interest in the case and for

**518**

this reason, we discount her testimony as to lack of knowledge of these mailings.

■ We bear in mind that plaintiff has the burden of proof by clear and convincing evidence of showing just what contempt has occurred. Benner v. Philadelphia Musical Society, 233 F.Supp. 108 (E.D.Pa.1964); Hart, Schaffner & Marx v. Alexander's Department Stores, 341 F.2d 101 (2d cir. 1965).

> "A heavy burden of proof rests upon a party urging contempt to show the facts establishing the contempt by clear and convincing evidence." 233 F.Supp. 111.

On the other hand, considering all the evidence in the case, we think the evidence at a minimum shows that approximately thirty wall charts were mailed out or distributed with machines. The whereabouts of the balance has not been satisfactorily explained.

■■ The law is clear that in finding a defendant to be in civil contempt of an injunction or restraining order issued by the court, the court's powers are remedial and are limited either (a) to compulsion to compel compliance with the injunction or (b) to award compensation and damages to the injured party. See McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949) (holding wilfulness is not an element); Franklin Mint, Inc. v. Franklin Mint, Ltd., 331 F.Supp. 827 (E.D.Pa. 1971). In this case, there is no need at this time to compel the defendants to do any affirmative act and therefore the court is limited to compensation. The federal courts have inherent power to enforce compliance with their lawful orders through civil contempt and it is essential that their mandates be obeyed. United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

In awarding compensation to plaintiff, the injured party, there are two items to be considered.

(1) *Compensation for actual damages sustained as the result of issuance of these wall charts.*

■ This as stated involves a difficult evaluation. It appears that the wall charts themselves were sold for only $4.50 each. On the other hand, they were considered an essential part of machines which were sold at sales prices varying from $2295 to $2645 each. The evidence indicates that the customers did not want the machines without the wall charts which are a valuable part of the transaction yet the charts are obviously not equal to the total value of the machine. (See testimony of Mr. Brodsky, page 481) We had expert testimony by Mr. Farrell, a distributor on Long Island, New York, who was engaged in selling such machines and he gave us his opinion as to how much of the value of the machine was represented by the wall chart. We accept this testimony as true and find that the value of each wall chart was $100.00. This we find to be the damages sustained by plaintiffs resulting from issuance of these wall charts in violation of the injunction and resulting interference with plaintiff's sales.

In view of the finding that thirty wall charts were distributed in violation of the preliminary injunction, the defendant will be fined $3000 for civil contempt to be paid to plaintiff as compensation for violation of the court's order.

(2) *In addition to the actual damages suffered, plaintiff is entitled to reimbursement for reasonable counsel fees and expenses actually incurred in prosecuting this contempt.*

■ At the threshold of this branch of the litigation now before us, we are met with a contention by the defendants that expenses of investigation in preparing the contempt proceedings should not be allowed. The plaintiff's counsel has filed a bill of costs and expenses including attorney's fees which they claim were incurred by reason of the defendant's contempt of court. In this are in-

cluded items such as preparation for depositions, making of phone calls to various schools as to possible receipt of the accused wall charts and interview of witnesses in preparation for affidavits and hearings, all this in addition to the charge for filing the proceedings themselves and attendance at court during the hearings.

Defendant contends that if an allowance is to be made for counsel fees and expenses, then no allowance can be made for so-called "investigation charges". Reliance is placed upon the case of Leman v. Krentler-Arnold Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (1932), affirming Krentler-Arnold Hinge Last Co. v. Leman, 50 F.2d 699 (CCA 1st 1931). The Supreme Court reversed the Circuit in this case for disallowing profits secured by the wrongdoer in a patent infringement case and directed that such profits may be recovered by the person whose patent has been infringed by acts of contempt. In the Circuit opinion, however, certain expenses were disallowed and also these profits. As this court understands the Supreme Court opinion, the Circuit was reversed only as to the disallowance of profits and the disallowance of the other items was affirmed. However, on examining the Circuit Court opinion, it appears that when expenses for investigation were referred to, this was an investigation as to the possible liability of another party and not the liability of the defendant itself which was found to be in contempt. The opinion contains significant language that such expenses "should be confined to the expenses incurred and the legal services rendered in *these* contempt proceedings, and to such as were reasonably necessary".

Applying that to this case, it is readily apparent that investigation was needed in order to determine what witnesses should be called, what affidavits secured and what were the facts that could be developed with respect to the alleged contempt of passing out the accused wall charts after the date on which the injunction was ordered, viz: April 13, 1972. Certainly, expenses of investigation as to the defendant itself were necessary as part of these proceedings. The attorney in every law suit has to examine witnesses and prepare his case so as to make a proper presentation at the hearing. Certainly, such investigation expenses and counsel fees for the time spent thereon are a necessary part of the proceedings. Such expenses are recognized under the Criminal Justice Act as an allowance for defense of criminal defendants and we see no reason why they should not be allowed as necessary expenses in connection with this contempt proceeding. We will therefore allow them.

█ It will be noted, however, that only expenses such as are reasonably necessary for the services rendered in *these* proceedings are to be allowed and they should only be allowed in a modest amount so as to provide reasonable compensation only. We have approached the problem of determining the amount in this light.

█ It is the court's conclusion that at no time were the services of two attorneys required and that therefore the expenses of Mr. Dalgarn's trips from California (he being the general counsel for the plaintiff company) to Pittsburgh and also other expenses such as telephone calls to California, and so forth, should be disallowed. Mr. Yeager, the local counsel for plaintiff, is a thoroughly competent and experienced Pittsburgh lawyer and ably conducted most of the investigation in this case and the contempt hearings themselves. For this reason, we have disallowed the expenses in connection with Mr. Dalgarn's appearance in the proceedings as not a proper item to be collected from the defendants.

█ █ We have been greatly troubled as to the valuation to be put on Mr. Yeager's time. There is no question that he is a leading member of the bar in Allegheny County and a charge of $50.00

per hour in this day and age may be considered a reasonable customary charge for lawyers of his professional standing to make to clients considering the demands upon their time and their standing in the profession. When we approach a problem such as this, however, of imposing these charges upon the opposing party in a law suit, the court is bound to consider only a reduced fair charge under the circumstances. We have therefore determined in the light of these discussions to allow expenses only in the amount of $1,950.69 and attorney's fees for Mr. Yeager only for 81.25 hours at $35.00 per hour or a total of $2,843.75 for fees. This makes a total allowance for counsel fees and expenses of $4,-794.44.

The court has allowed nothing for proceedings in connection with the attempt to disqualify defendant's attorneys included in Division 2 of the plaintiff's bill of costs. The court has been unable to determine how the attempted disqualification of defendant's counsel bore on the contempt proceeding. The motion for contempt was filed October 6, 1972 and the motion to disqualify November 1, 1972. The filing of the latter threw the case into confusion until it was determined and nothing further could proceed until it was finally decided that defense counsel were not to be disqualified at least for the time being. The court reserved the right to disqualify in the future if breach of confidential matters should later appear.

We are following the admonition laid down by the First Circuit in the Leman case and limiting the allowance of counsel fees and expenses to *these* proceedings only and not to other proceedings in the case.

Appendix II shows in detail the items allowed.

The foregoing contains findings of fact in accordance with Rule 52(a).

## CONCLUSIONS OF LAW

1. The defendants, S. David Brodsky and Super Athletics Corporation, a corporation, have been in contempt of the order of this court entered April 13, 1972, in distributing wall charts in violation thereof.

2. This contempt is a civil contempt only.

3. The defendants should be required to pay a fine as compensation to the plaintiff made up of the following items:

| | |
|---|---|
| (a) Damages to plaintiff resulting from distribution of the accused wall chart, 30 at $100 each | $3,000.00 |
| (b) Counsel fees and expenses | $4,794.44 |
| Total | $7,794.44 |

An appropriate order will be entered.

## APPENDIX I

### ORDER

AND NOW, to wit, April 13, 1972, upon consideration of plaintiff's Motion for Preliminary Injunction and after a hearing on the same and for the reasons set forth in the foregoing memorandum,

IT IS ORDERED that defendants Larry Salkeld, Donald E. Pinchock, S. David Brodsky and Wes Hudson, individuals, and Super Athletics Corporation, a corporation, their agents, servants, employees and all persons in active concert or participation with them are enjoined, pending a final disposition on the merits, from copying, reproducing, distributing plaintiff's wall charts or otherwise infringing plaintiff's copyrighted instructional material; namely:

(i) "Universal Gym Machine Exercise Chart", copyright 1969;

(ii) "Universal Gym Machine Exercise Chart", copyright 1970; and

(iii) "Coaches Training Manual", copyright 1970.

Bond is required in the amount of $5,000 pursuant to Rule 65(c) to be approved by the court prior to the actual issuance of the preliminary injunction.

(s) William W. Knox
United States District Judge