VUITTON et FILS S. A.,
Plaintiff-Appellant,

v.

CAROUSEL HANDBAGS, Defendant,

and

Solomon Mizrahi, Joseph Mizrahi, and
Maurice Mizrahi, Additional
Defendants-Appellees.

No. 571, Docket 78–7582.

United States Court of Appeals,
Second Circuit.

Argued Jan. 8, 1979.

Decided Feb. 1, 1979.

---

**17.** *See* note 2 *supra.*

J. Joseph Bainton, New York City (Reboul, MacMurray, Hewitt, Maynard & Kristol, Beckman Rich, New York City, of counsel), for plaintiff-appellant.

Fred Brody, New York City, for additional defendants-appellees.

Before KAUFMAN, Chief Judge, and SMITH and OAKES, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

Imitation may be the sincerest form of flattery, but the makers of Louis Vuitton leather goods have not been pleased by the recent flood of counterfeit Vuitton handbags in the New York area. The French corporation, whose pocketbooks are sold for upwards of $200, is facing stiff competition from midtown retailers, whose bogus merchandise is available for $50 or less. To protect its trademark [1] and profits, Vuitton has brought 35 suits in the district courts of this Circuit, in the hope that anyone who desires the cachet a Vuitton bag bestows on its owner will have no alternative but to purchase the genuine article. This is an appeal from an unsuccessful skirmish in Vuitton's legal campaign.

## I.

The instant litigation was commenced on September 29, 1978, against Carousel, a handbag store on East 42nd Street in New York City. Vuitton alleged that Carousel had engaged in unfair competition and trademark infringement by offering counterfeit products to the public. Negotiations with Solomon Mizrahi, Carousel's proprietor, resulted in a consent decree forbidding the store "and all those acting in concert or participation with it" from selling sham Vuitton leather goods. Solomon Mizrahi was not personally named in the injunction.

Judge Brieant, who has presided over the bulk of the Vuitton litigation in the Southern District of New York, approved the consent decree on October 17, and it was filed the following day.

On the succeeding Saturday, Marc Jaffe, a vigilant Vuitton attorney, noticed a brummagem bag in the display window of "Helou", a store on Broadway. Discreetly questioning the Helou sales staff, Jaffe discovered that more bags could be obtained at "Mirage", a shop on 34th Street. An employee of the professional shopping service engaged by Vuitton was able not only to purchase a counterfeit Vuitton pocketbook at Mirage, but also to ascertain that additional merchandise was available.

A visit to the New York County Clerk's Office revealed that Mirage was owned by a partnership consisting of Solomon, Maurice, and Joseph Mizrahi. Vuitton then moved to cite the Mizrahis for both civil and criminal contempt of the October 17 injunction, on the theory that the three partners were acting in concert with Carousel. The plaintiff also asked for damages based on the number of sales made by the Mizrahis in violation of the consent decree, and attorney's fees as well.

At the hearing on the contempt motion, the three defendants claimed that they were never served with the injunction and accordingly could not be held in contempt.[2] Judge Brieant stated that in the absence of personal service or an admission of service, he would not cite the Mizrahis for contempt. The district judge did provide Vuitton with the solace of a limited remedy, however, for he broadened the scope of the injunction to include Mirage and the three Mizrahis personally.[3] Vuitton has now ap-

---

1. The trademark has been registered in the Patent Office since 1932, and Vuitton has advertised the mark extensively.

2. The defendants also argued that inasmuch as the bag sold by Mirage was the last in stock, any violation of the injunction was not willful. The fact that the prohibited act was done inadvertently or in good faith, however, does not preclude a citation for civil contempt, for the

sanction is remedial in nature. *See, e. g., McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1948); *Doe v. General Hospital,* 140 U.S.App.D.C. 153, 157, 434 F.2d 427, 431 (1970).

3. The Mizrahis assert that Vuitton waived its right to any further sanctions when it agreed to the broader injunction decreed by Judge Brieant. The record does not support this ar-

pealed Judge Brieant's refusal to find the defendants in civil contempt, and asks for damages and attorney's fees.

We believe that Judge Brieant should have held an evidentiary hearing to determine whether the defendants were bound by the injunction of October 17. Accordingly we reverse and remand to the district court. Should Vuitton establish that the Mirage sale violated the terms of the decree, and that, with respect to any of the defendants, (1) he had actual knowledge of the terms of the injunction, and (2) he was acting in concert with Carousel, the judge will consider whether plaintiff has not earned the right to an order in civil contempt and an award of proven damages.

## II.

■ Rule 65(d) of the *Federal Rules of Civil Procedure* provides:

Every order granting an injunction . . . is binding only upon the parties to the action . . . and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

This Rule codifies the long settled principle that personal service of an injunction is not required so long as those whom the plaintiff seeks to hold in contempt had actual notice of the decree. *See, e. g., United States v. Hall,* 472 F.2d 261 (5th Cir. 1972); *Universal Athletic Sales Co. v. Salkeld,* 376 F.Supp. 514, 516 (W.D.Pa.1974), *vacated on other grounds,* 511 F.2d 904 (3d Cir.), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46

L.Ed.2d 92 (1975). *Cf. Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 51 (2d Cir. 1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). Judge Brieant thus did not have discretion to require service of process as a condition of citing the Mizrahis for civil contempt and granting compensatory damages, if proven.[4] It is clear, of course, that Solomon had actual notice of the terms of the October 17 injunction, since he signed the consent decree on behalf of Carousel. The record before us, however, does not reveal whether Joseph or Maurice Mizrahis had such notice, and Joseph or Maurice may not be held in contempt unless Vuitton establishes that this requirement of Rule 65(d) has been satisfied.[5]

■ A court of equity cannot, of course, bind the world at large through a broadly worded injunction. Nevertheless, American jurisprudence has rejected Lord Eldon's view that only a party to the suit may be bound by a decree, *Iveson v. Harris,* 32 Eng.Rep. 102 (Ch.1802), in favor of a more pragmatic stance that protects the rights of both the plaintiffs and those to whom the order is addressed.[6] *See generally* O. Fiss, *Injunctions* 620–702 (1972); Dobbs, *Contempt of Court: A Survey,* 56 Cornell L.Rev. 183, 249–61 (1971). Rule 65(d) articulates the standard for determining the reach of the injunction. Before any of the Mizrahis may be held in contempt, then, Vuitton must demonstrate that he was acting in concert with Carousel at the time the counterfeit handbag was sold by Mirage. Fed.R.Civ.P. 65(d).

---

gument; indeed, Vuitton went out of its way to preserve its claim for appeal.

**4.** Since the question was neither briefed nor argued, we express no view as to whether a district judge may refuse, in his discretion, to cite a defendant for criminal contempt because he has concluded that, under the circumstances, personal service should have been effected.

**5.** Solomon Mizrahi's contention that he may not be cited for contempt because he did not have notice of the filing of the judgment, but only of the consent decree, is without merit. So long as the defendants knew the court was enjoining them and were cognizant of the terms of the injunction, they are responsible for the consequences. *See Radio Corp. of America*

*v. Cable Radio Tube Corp.,* 66 F.2d 778, 781–82 (2d Cir. 1933), *cert. denied,* 290 U.S. 703, 54 S.Ct. 373, 78 L.Ed. 604 (1934); *Universal Athletic Sales Co. v. Salkeld,* 376 F.Supp. 514, 516 (W.D.Pa.1974), *vacated on other grounds,* 511 F.2d 904 (3d Cir.), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975).

**6.** A court may also bind nonparties to the terms of an injunction to preserve its ability to render a judgment in a case over which it has jurisdiction. *Herrlein v. Kanakis,* 526 F.2d 252, 255 (7th Cir. 1975); *United States v. Hall,* 472 F.2d 261 (5th Cir. 1972). This principle is, of course, not in issue here.

■ Whether one not named in an injunctive decree may nevertheless be bound by it depends on the facts of each case, *Crane Boom Life Guard Co. v. Saf-T-Boom Corp.,* 362 F.2d 317, 322 (8th Cir. 1966), *cert. denied,* 386 U.S. 908, 87 S.Ct. 853, 17 L.Ed.2d 782 (1967). We do know, from a perusal of Solomon's affidavit below, that he is Joseph's brother and that he purchased 24 counterfeit Vuitton handbags in July 1978, retained 18 for sale at Carousel, and sent 6 to Mirage. On the record before us, however, we are unable to ascertain the relationship between the two stores and consequently cannot determine if Joseph, Maurice, or Solomon (in his capacity as a Mirage partner), aided and abetted Carousel, nor whether any of these defendants is legally identified with that store. *See Backo v. Local 281, United Brotherhood of Carpenters,* 438 F.2d 176, 180–81 (2d Cir. 1970), *cert. denied,* 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971) (quoting *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 833 (2d Cir. 1930) (L. Hand, J.)); *Herrlein v. Kanakis,* 526 F.2d 252, 254 (7th Cir. 1975). It would be appropriate for Judge Brieant to resolve this question with respect to each defendant in the course of the evidentiary hearing.

### III.

Once Vuitton has established that a defendant had actual knowledge of the decree, and was acting in concert with Carousel, we are of the view that the terms of Rule 65(d) are satisfied, and that the defendant is bound by the October 17 injunction. The question of contempt and appropriate relief will then come into play.

■ The court below has already indicated that, in its view only prospective relief would be appropriate in this case. Judge Brieant warned the defendants that "any more fooling around in this case . . . is going to bring down the wrath from on high." If a civil contempt citation and the framing of a remedy in this case were wholly within the trial judge's discretion, then, a remand would obviously be futile. We believe, however, that if any of the defendants violated the decree, a finding of civil contempt would be in order, and actual damages would be available to Vuitton.

■ Generally, the sanctions imposed after a finding of civil contempt serve two functions: to coerce future compliance and to remedy past noncompliance. *See generally United States v. United Mine Workers,* 330 U.S. 258, 302–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Sunbeam Corp. v. Golden Rule Appliance Co.,* 252 F.2d 467 (2d Cir. 1958). So far as the first of these functions is concerned, the district judge, sitting in equity, is vested with wide discretion in fashioning a remedy. *See, e. g., E. Ingraham Co. v. Germanow,* 4 F.2d 1002, 1003 (2d Cir. 1925); *Danielson v. United Seafood Workers,* 405 F.Supp. 396, 403 (S.D. N.Y.1975). By contrast, once the plaintiff has proved that he has suffered harm because of a violation of the terms of an injunction, compensatory damages are appropriate.

■ In the leading case, *Parker v. United States,* 153 F.2d 66, 70 (1st Cir. 1946), Judge Magruder analogized the imposition of a compensatory fine in civil contempt to a tort judgment for damages caused by wrongful conduct. The sanction is employed not to vindicate the court's authority but to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed. The district court is not free to exercise its discretion and withhold an order in civil contempt awarding damages, to the extent they are established. *See id.; Yanish v. Barber,* 232 F.2d 939, 947 (9th Cir. 1956); *McGoff v. Rapone,* 78 F.R.D. 8, 30 (E.D.Pa.1978); *Thompson v. Johnson,* 410 F.Supp. 633, 643 (E.D.Pa.1976), *aff'd,* 556 F.2d 568 (3rd Cir. 1977). *Cf. McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1948).

■ Since the plaintiff should be made whole for the harm he has suffered, it is appropriate for the court also to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful. *W. E. Bassett Co. v. Revlon, Inc.,*

435 F.2d 656, 664–65 & n.5 (2d Cir. 1970) (reversing denial of fees); *Andre Matenciot, Inc. v. David & Dash, Inc.,* 422 F.Supp. 1199, 1211–12 (S.D.N.Y.1976).

On remand, therefore, if Judge Brieant concludes that any of the defendants had actual notice of the injunction, acted in concert with Carousel, and is in contempt because of a violation of the terms of the decree, Vuitton should be afforded an opportunity to prove its damages.