**WARNER BROS., INC., Plaintiff,**

v.

**GAY TOYS, INC., Defendant.**

**No. 81 Civ. 1880(WK).**

United States District Court,
S.D. New York.

March 30, 1984.

Robert Bernstein, Cowan, Liebowitz & Latman, Michael Davis, Weiss, Dawid, Fross, Zelnick & Lehrman, New York City, for plaintiff.

Milton Wolson, New York City, Robert Mentag, Detroit, Mich., for defendant.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

We have before us several motions in the continuing litigation over defendant's unauthorized toy imitations of the "General Lee" automobile from plaintiff's television show "The Dukes of Hazzard." These motions challenge various portions of our December 23, 1981 Order holding defendant in contempt, and of the Report and Recommendation of the Honorable Joel Tyler, United States Magistrate, as to the damages due plaintiff from defendant's contemptuous sales of its "Dixie Racer."

On December 21, 1981, the parties appeared before us at a Contempt Hearing, at the conclusion of which we held defendant in civil contempt for violations of our temporary restraining order of October 22, 1981. The formal Contempt Order of December 23rd was submitted *ex parte*, as per our instructions, on the understanding that defendant reserved the right to object on grounds of form to any portion of the Order. Defendant did subsequently object to the provision of the Order which awarded to plaintiff defendant's profits from the contemptuous sales, which award had not been specifically discussed during the contempt hearing. We denied this motion, with leave to renew after Magistrate Tyler had filed his report. No other motions were received, and Magistrate Tyler proceeded with the inquest.

Magistrate Tyler's lengthy and detailed report, the product of much careful consideration of a voluminous and complicated record, has now been received by us. In this opinion, we consider defendant's renewed motion to strike the award of its profits; a new motion to strike the provision of the Contempt Order holding defendant in willful contempt; and defendant's objections to the Magistrate's Report. Due to the length and complexity of the Magistrate's Report, we allowed both sides ample time to present their position, and we heard oral argument on December 16, 1983.

## DEFENDANT'S MOTIONS

We consider first defendant's motion to strike our finding that it acted in willful contempt of our temporary restraining order in its subsequent sales of its "Dixie Racer." Defendant has presented no valid explanation for the sudden appearance of this motion, almost two years after the contempt order was signed. At that time we made it clear that any objection as to the form of the order would be considered. That defendant understood this is also clear since it did, in fact, move to strike the award of damages (which motion we consider below). We are aware of no reason why defendant could not have raised this issue at the same time. Defendant's belated excuse that it was unaware that the Magistrate would rely so heavily on that finding, since no mention of willfulness had been made at the December 18th hearing, simply does not hold water. Defendant had notice of the finding of willfulness as soon as it received our signed Order, and it made no objections to it. The Magistrate was fully entitled to consider that he was dealing with willful conduct, and we shall not, at this very late date, consider further a motion which could and should have been made long ago.

Defendant's motion to strike the award to plaintiff of its profits from sales of the contemptuous cars, however, is timely. We specifically permitted defendant to renew its prior motion to this effect after the

issuance of the Magistrate's Report, and such renewal was made within a reasonable time of that event.

The award of damages to a non-competing defendant when plaintiff can be compensated by an award of lost licensing royalties is, as the Magistrate noted, a troublesome problem, and one to which the Magistrate gave especially careful consideration. Under the circumstances before us, however, we find that the propriety of such an award has become a moot question.

Defendant conceded at oral argument that such an award might appropriately be made "on the merits of the case," should the Court of Appeals affirm our decision granting summary judgment and a permanent injunction in plaintiff's favor. Transcript ("Tr.") of December 16, 1983 at 9. Subsequent to this statement, the Court of Appeals did indeed affirm our decision. 724 F.2d 327. Plaintiff will not be unjustly enriched by receiving an award of profits now, rather than after a further inquest "on the merits," since this award will be offset against any award which plaintiff would receive should it choose to proceed with an inquest on the final judgment.[1]

## OBJECTIONS TO THE MAGISTRATE'S REPORT

■ As a preliminary matter, we feel it appropriate to remark again on the extraordinary amount of consideration which clearly went into Magistrate Tyler's lengthy and detailed report. Since our Order of Reference instructed the Magistrate to hear and report, however, we are required to use our own discretion, based upon his findings and analysis, to arrive at a *de novo* determination. Bearing both of these factors in mind, we commence on our consideration of defendant's numerous challenges to the Magistrate's Report.

## ACCOUNTING METHOD

Defendant's first objection to the Magistrate's recommendations concerns the method of accounting used to compute the costs of its production of the infringing items, which costs are to be subtracted from any profits attributable to the sales of those items.

■ The Magistrate adopted plaintiff's proposal of the "incremental approach" of accounting, under which only those costs may be subtracted which were incurred as a direct result of the production of the infringing items. Under this method, only increased costs are so attributable. Defendant urges that the proper method is the "full absorption approach," in which a contemnor may disallow not only such increased costs but also costs for fixed expenses, such as overhead, to the extent that such expenses are related to the production of the contemptuous items.[2] We agree with defendant that, under the law of this Circuit, the full absorption approach is the correct accounting method.

The leading case on this subject is *Sheldon v. Metro-Goldwyn Pictures Corporation* (2d Cir.1939) 106 F.2d 45, in which Judge Learned Hand thus posed the issue (at 54):

Next is a challenge to any allowance for "overhead" at all, on the theory that the defendants did not show that it had been increased by the production of the infringing picture. The correct rule upon

---

1. We note that defendant has recently moved for reconsideration *en banc* of the Court of Appeals' affirmance of our grant of summary judgment and final injunction. We recognize that should the Court of Appeals reconsider its decision, or should certiorari be granted, we may have to grapple with defendant's contention that its profits were improperly included in the Contempt Order. However, we need not do so at this time.

2. For example, if defendant had bought new machinery to produce the infringing toys, this would be deductible under either approach. However, if it had used the same machinery to produce the infringing items that had been used to produce noninfringing items, the costs of operating and maintaining such machinery would be deductible under the full absorption approach (to the extent that the machinery was used for the infringing items); however, under the incremental approach, no deduction at all would be allowed for such costs.

this point is stated in *Levin Bros. v. Davis Mfg. Co.*, 8 Cir., 72 F.2d 163, and in substance it is this. "Overhead" which does not assist in the production of the infringement should not be credited to the infringer; that which does, should be; it is a question of fact in all cases. In the case at bar the infringing picture was one of over forty made by the defendants, using the same supervising staff and organization, which had to be maintained if the business was to go on at all. Without them no picture could have been produced; they were as much a condition upon the production of the infringing picture as the scenery, or the plaintiffs' play itself. Levin Bros. ... did not hold otherwise

Plaintiffs challenge the application of this rule on two grounds. First, they claim that, far from supporting the full absorption method as proposed by defendant, *Sheldon* actually supports the incremental approach as this approach was approved in *Levin Bros.* However, the plain language quoted above contradicts this: whatever the Eighth Circuit intended in *Levin Bros.*, Judge Hand interpreted that decision to mean that overhead could be deducted from an infringing defendant's profits; and it is this latter holding which subsequent cases in this Circuit have followed[3] and by which we are bound.

Plaintiff next asserts that the *Sheldon* rule is inapplicable to the instant action because of factual differences between the cases, specifically the ability or inability of the Court to make a direct calculation of increased expenses under the incremental approach. Contrary to plaintiff's contention, however, *Sheldon* did not hold that overhead costs could only be deducted where such a direct calculation cannot be made. Rather, the feasibility of such a calculation was taken into account in that case in order to determine the *manner* of allocating overhead expenses to the infring-

ing conduct, 106 F.2d at 52–53. At no point did the Court imply that if direct calculation of increased costs had been feasible the full absorption accounting method would be inapplicable.

Further, even accepting for purposes of this argument plaintiff's contention that the calculations which could not be made in *Sheldon* can be made here, we find this case to be factually closer to *Sheldon* than to the two District Court cases which plaintiff has cited as applying the incremental approach. In neither *Elnicky Enterprises, Inc. v. Spotlight Presents, Inc.* (S.D.N.Y. 1981) 213 USPQ 855 nor *Polo Fashions, Inc. v. Extra Special Products, Inc.* (E.D. N.Y.1980) 208 USPQ 421, could the defendant's overhead be considered a major factor in its profits from infringement. The same cannot be said for Gay Toys. Like Metro-Goldwyn Pictures, defendant here produced the infringing items as part of its ongoing business—in the course of which it produced other, non-infringing items—and not merely as a one-shot enterprise. The cases decided by the Court of Appeals for this Circuit do not suggest that we should ignore this reality of defendant's business in our assessment of its profits and costs, and we do not feel that we may do so.

We therefore remand to the Magistrate for a calculation of defendant's costs under the full absorption approach.[4]

## MARCHAND'S PROFITS

In addition to defendant's own profits, the Magistrate recommended that plaintiff be awarded the profits of Marchand Enterprises, Inc., a corporation controlled by defendant which produced molded parts for its cars. We cannot agree with this recommendation.

The Magistrate pierced the corporate veil between the two companies on a finding that defendant had "complete domination" over "what Marchand can and cannot pro-

---

**3.** *E.g., W.E. Basset Company v. Revlon, Inc.* (2d Cir.1970) 435 F.2d 656; *see also Stevens Linen Associates, Inc. v. Mastercraft Corp.* (S.D.N.Y. 1980) 210 USPQ 573, *modified on other grounds* (2d Cir.1981) 656 F.2d 11.

**4.** Proceedings on remand will be held at the White Plains Courthouse, where the Magistrate is now stationed.

duce," Report at p. 48. However, it is conceded that Marchand was not established or maintained for the purpose of making parts for the infringing cars or taking any other actions to avoid the strictures of our Injunction or Contempt Order. Indeed, Marchand had been in business—and charging defendant competitive prices—before the institution of this lawsuit. On this crucial issue of fraudulent intent, plaintiff merely relied prior to and at oral argument on the conceded closeness of the relationship between the two companies. Subsequent to oral argument, plaintiff drew our attention to a single case, *Coca Cola v. International Telephone & Telegraph* (N.D.Ga.1978) 201 USPQ 424, for the proposition that "no proof of actual fraud or intent to defraud should be necessary to pierce the corporate veil of the subsidiary ... Only proof of a federally defined violation should be required." 201 USPQ at 428. Quite apart from the fact that this case is not controlling upon us, we note that the above-quoted words are purest dicta, labeled by the Court "some thoughts on the choice of law" and completely unconnected to the issue actually decided by the Court.

■ ■ We therefore remain convinced that some proof of fraud, whether actual or intended, must be offered before we may appropriately pierce the corporate veil that separates defendant and Marchand. No such proof having been tendered, we must reject the Magistrate's recommendation.

**TREBLE DAMAGES**

■ We note initially that, had our reference to Magistrate Tyler been to hear and determine rather than to hear and report, we would have no qualms about accepting his decision to award plaintiff three times the amount of its lost profits. However,

although we cannot by any means say that the Magistrate abused his discretion, we find, in the exercise of our own discretion, that such an award should not be made.

■ An award of treble damages, like any other sanction imposed upon a civil contemnor, may serve either or both of two functions: to deter future contemptuous actions, or to compensate the plaintiff fully where an ordinary award of damages could not do so.[5] *Vuitton et Fils, S.A. v. Carousel Handbags* (2d Cir.1979) 592 F.2d 126; *Perfect Fit Industries, Inc. v. Acme Quilting Co.* (2d Cir.1982) 673 F.2d 53. Neither purpose is truly applicable here.

■ The Magistrate relied in part upon the fact that defendant's conduct was of "wilful and deliberate nature," Report at 66. Although, as we have said, we adhere to our finding in this regard, we do not think that willfulness is, in and of itself, enough to justify such an award. Gay Toys is not in the class of the defendant in *Deering, Milliken & Co. v. Gilbert* (2d Cir.1959) 269 F.2d 191, upon which the Magistrate and plaintiff rely. In that case, the court found that the defendant had "embarked on a criminal scheme, calculated to trade upon [plaintiff's] trademark," 269 F.2d at 192, which involved the use of fabric stolen from a third party and "criminally received by [defendant]," *id.* The defendant there further displayed its contumacy by refusing to cooperate with the court during trial. The conduct of defendant in the instant action, while deserving of censure, is simply not comparable. Nor does such conduct indicate to us that defendant is so perverse as to be in need of strong measures to prevent it from further transgressing. Defendant has been held in contempt one time only; no further contemptuous sales were made after the Contempt Hearing.[6] We are convinced that,

---

5. Defendant appears to contend that treble damages may never be assessed upon a civil contemnor. This contention is directly at variance with Section 35 of the Lanham Act, 15 U.S.C. § 1117, which provides:

In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found

as actual damages, not exceeding three times such amount.

6. Plaintiff implied, at oral argument, that defendant had continued its contemptuous conduct after being held in contempt. We know of no evidence to this effect, and reject any such implication.

insofar as defendant needed to be deterred from unlawful conduct, this object has been achieved.

Nor do we think that an ordinary damage award will fail to compensate plaintiff fully. Magistrate Tyler found, quite correctly, that plaintiff had suffered no damage to its good will. While it is conceivable that plaintiff might have suffered pecuniary losses beyond the losses of its licensing revenues, we are impressed by the Magistrate's finding that the extent of any such losses were "not sufficiently demonstrated," Report at 66. In light of plaintiff's failure in this respect, we choose not to exercise our discretion to award plaintiff treble damages.

## DEDUCTIONS FROM DEFENDANT'S PROFITS

### 1. Income Taxes

The Magistrate refused to allow defendant to deduct from its profits on the contemptuous sales the amount paid for income taxes on these profits. Defendant's objection to this disallowance is no more than a challenge to the Magistrate's reliance on that provision of the Contempt Order finding it in willful contempt. Since, as we have said, such reliance was justified and indeed to be expected, we affirm and adopt the Magistrate's recommendation.

### 2. Variance

Defendant objects to the Magistrate's rejection of its proposed deduction for unfavorable variances on overhead. After extensive and careful consideration, the Magistrate found that defendant had not clearly demonstrated its entitlement to such a deduction, and found further that plaintiff's calculation, which did not allow for such a deduction, was more reliable than the calculations relied upon by defendant. We adopt this considered decision.

### 3. Other Specific Deductions

The Magistrate recommended that we disallow deduction of defendant's legal expenses, bonuses paid to its corporate officers, and costs of mold amortization and repair, since he found that defendant had

failed to show a connection between these expenses and the contemptuous products. Defendant asserts that such a finding is inconsistent with the full absorption accounting method. However, the Magistrate found, and we agree, that the failure to establish such a connection invalidates the claimed deductions under any accounting method.

Even under the full absorption approach, defendant may not deduct costs which it cannot establish were related to the contemptuous conduct. We repeat the words of Judge Learned Hand in *Sheldon v. Metro-Goldwyn Pictures Corporation, supra,* (at 54) upon which defendant relies:

"Overhead" which does not assist in the production of the infringement should not be credited to the infringer; that which does, should be; it is a question of fact in all cases.

We see no reason why this "question of fact" should not apply to all expenses claimed by defendant as deductions. While it is true, as defendant claims, that the relationship of expense to infringement need not be a "direct causal link," the Magistrate found not only that no such link existed, but that defendant had completely failed to prove *any* relationship at all. We are aware of no case which permits an allowance of expenses under these circumstances. We therefore affirm and adopt the Magistrate's recommendation that they be disallowed.

## ATTORNEYS' FEES

After wading through billing sheets numerous and tortuous almost to the point of incomprehensibility, the Magistrate arrived at what we feel to be a very sensible method of calculating plaintiff's attorneys' fees. Although defendant claims that the problems encountered by the Magistrate "made it difficult, if not impossible to analyze plaintiff's requested fees through the 'lodestar' approach," Defendant's Objections at 36, we find that the Magistrate did a commendable and convincing job of precisely that. The fact that defendant has a different conception of

what constitutes a "reasonable valuation" of plaintiff's counsel's work, defendant's Objections at 37, does not convince us that the Magistrate's approach was not appropriate. We therefore adopt the approach and the figure recommended by the Magistrate.

## OTHER COSTS AND DISBURSEMENTS

While recognizing that certain of plaintiff's claimed costs, such as travel, photocopying and telephone expenses, were not satisfactorily documented, the Magistrate granted them on the grounds that these activities were appropriately included in an award to plaintiff and that defendant had not specifically challenged them. Defendant does not dispute that it made no specific arguments against such an award; however, it asserts, the Magistrate should have recognized and accepted its argument that any such costs should be reduced by the same percentage as plaintiff's attorneys' fees.

Although we find defendant's position rather more nebulous than might be desired—it is unclear, for example, whether defendant refers to its own recommended rate of reduction in attorneys' fees, the percentage embodied in the total reduction in fees recommended by the Magistrate, or merely the 10% across-the-board reduction applied by the Magistrate after he had made various specific deductions—we find its general suggestion to be in keeping with the Magistrate's conclusion as to the incompleteness of plaintiff's presentation. We therefore remand to the Magistrate to determine, in light of his findings, what if any specific deductions should be made and what, if any, across-the-board reduction should be applied.

## PLAINTIFF'S WITNESS FEES

Defendant objects to the Magistrate's recommendation of fees for plaintiff's expert accounting witness James Goonan in excess of the limit specified by 28 U.S.C. § 1821. While we recognize the importance of Goonan's contribution to the Magistrate's determination of the appropriate accounting method by which to measure defendant's profits, we do not think such an award is appropriate.

The statutory limit as to expert fees may, as the parties recognize, be circumvented in "exceptional" cases. However, the case and facts upon which plaintiff relies do not warrant such action here. In *Hain Pure Food Co., Inc. v. Sona Food Products Co.* (C.D.Cal.1980) 491 F.Supp. 39, the court merely enforced an agreement by the defendant that it would pay the costs of plaintiff's accountant: approval of costs beyond the statutory limit thus stemmed from the parties themselves, not from a determination by the court. While the court itself approved an award above the statutory limit in *Hexcel Products, Inc. v. American Cyanamid Co.* (D.Md.1965) 147 USPQ 511, this award was in conformity with its Contempt Order provision for "reasonable" expert fees. We made no such allowance, prior to the proceedings before the Magistrate, for fees in excess of the statutory limit; nor were we requested to make any prior ruling that the fees of any expert were to be proportional to the complexity or importance of his testimony. Even had we done so, we do not feel that excessive fees would now be "reasonable" in light of our rejection of the accounting method toward the acceptance and use of which all Mr. Goonan's efforts were directed. We therefore reduce his fees to the amount allowed by 28 U.S.C. § 1821, and remand to the Magistrate for a calculation of this amount.

## PREJUDGMENT INTEREST

Finally, defendant objects to the award to plaintiff of prejudgment interest "on all amounts of lost profits and damages from May 15, 1981, and on attorneys' fees and allowable disbursements from July 1, 1982," Report at 99. We need not decide the parties' debate as to whether the propriety of such an award is governed by New York or Federal law, since we find that, even if an award of interest is discretionary (as under Federal law) rather than mandatory (as under New York law), the

Magistrate correctly exercised his discretion.

We reject defendant's contention that the award of interest on plaintiff's lost profits is "unfair" because plaintiff could not prove that every toy car sold by defendant would have been sold by plaintiff's licensees but for defendant's contemptuous conduct. The Magistrate took this fact into account, as defendant is well aware; and the amount of plaintiff's damages recommended by the Magistrate, upon which prejudgment interest is to be awarded, reflects it. Defendant would appear to imply that, since plaintiff's proof was unconvincing in this regard, it should receive no damages whatsoever for its lost profits. The Magistrate has not so recommended, and we do not so hold. Prejudgment interest is appropriate to the damages as correctly calculated by the Magistrate.

Defendant's objections to the award of interest on its own profits are similarly unavailing.[7] Defendant contends that, while the Magistrate recommended such interest from May 15, 1981, "interest [on a defendant's profits] is usually allowed from the date of filing of the Master's report," *Carter Products, Inc. v. Colgate-Palmolive Company* (D.Md.1963) 214 F.Supp. 383, 417. We find, however, that the instant action presents the sort of "special circumstances" which justify an exception to this rule, 214 F.Supp. at 417.

As the court in *Carter Products* recognized, the willfulness of a defendant's behavior may remove a case from the above rule. We find here none of the "countervailing equities," 214 F.Supp. at 417, on which the *Carter Products* Court relied in declining to find such an exception. Far from receiving an award in excess of the defendant's actual profits, like the *Carter Products* plaintiff, Warner Bros. has actually received *less* than its calculation of these profits due to our acceptance of defendant's accounting method; and although we have disallowed some of defendant's deductions, we note that Magistrate Tyler did approve some over the plaintiff's objections.[8] We thus cannot say that an award of prejudgment interest on defendant's profits will be a "windfall" to plaintiff. In light of defendant's willful contempt, we think this award is justified.

Finally, with respect to interest on the award of plaintiff's attorneys' fees, we agree with plaintiff that such an award is properly considered a component of damages in a contempt case. *See, e.g., Vuitton, supra.* We thus find inapplicable the rule enunciated in *Carter Products*, that in ordinary litigation an award of attorneys' fees is analogous to taxable costs and disbursements and is not subject to interest.

We therefore adopt in all respects the Magistrate's recommendation of an award of prejudgment interest.

SO ORDERED.

---

7. Although the Magistrate's Recommendation mentions only "lost profits and damages," Report at 99, it is clear from the applicable footnote that this award was intended to include defendant's profits. Report at p. S, n. 66.

8. Plaintiff has not appealed from these latter determinations, and we accordingly adopt them.