UNITED STATES DISTRICT COURT 
 DISTRICT OF CONNECTICUT 

UNITED STATES SECURITIES AND EXCHANGE 
COMMIPSlSaIiOnNtif, f 

 v. , 

IFTIKADR eAfeHnMdaEnDt, 

 , and 
 Civil No. 3:15-cv-675 (JBA) 
IFTIKAR ALI AHMED SOLE PROP; I-CUBED 

DOMAINS, LLC; SHALINI AHMED; SHALINI 
AHMED 2014 GRANTOR RETAINED ANNUITY August 4, 2023 
TRUST; DIYA HOLDINGS LLC; DIYA REAL 
HOLDINGS, LLC; I.I. 1, a minor child, by and 
through his next friends IFTIKAR and SHALINI 
AHMED, his parents; I.I. 2, a minor child, by and 
through his next friends IFTIKAR and SHALINI 
AHMED, his parents; and I.I. 3, a minor child, by 
and through his next friends IFTIKAR and 
SHALINRIe AliHefM DEeDfe,n hdias nptasrents, 
 . 
 MEMORANDUM AND ORDER RE: CONTEMPT 
 On November 15, 2022, Plaintiff Securities and Exchange Commission (“SEC”) moved 
[Doc. # 2379] for an order to show cause why Defendant Iftikar Ahmed and Relief Defendant 
Shalini Ahmed (“the Ahmeds”) should not be held in civil contempt. The SEC alleged that the 
Ahmeds’ attempt to have the Connecticut state court enter their dissolution agreement 
affecting assets subject to the asset freeze and the Receivership established by the Court 
violated the Court’s orders. The Receiver joined [Doc. # 2398] in that request. This Court 
granted the motion and issued an Order to Show Cause [Doc. # 2471] and a show cause 
 Despite the SEC’s demand in its Motion for an Order to Show Cause filed November 
15, 2022 that the Ahmeds withdraw the dissolution agreement, it was not until July 5, 2023, 
two days before the show cause hearing, that Ms. Ahmed notified the Court, the SEC and the 
Receiver that she had moved in state court to withdraw her request to enter the dissolution 
agreement “without prejudice” [Docs. # 2534, 2535-3]. While Ms. Ahmed then sought 
cancellation of the show cause hearing, SEC and Receiver opposed, (Joint Notice [Doc. 
# 2536]) and the show cause hearing went forward as scheduled on July 7, 2023. [Doc. # 
2544]. The parties filed their post-hearing briefing on July 17, 2020. (Receiver’s Post-Hearing 
Br. [Doc. # 2545]); (Ms. Ahmed’s Post-Hearing Br. [Doc. # 2546]); (SEC’s Post-Hearing Br. 
[DoIc.. # 254B7a]c)k ground 

 The SEC filed its securities fraud complaint against Defendant and sought a temporary 
restraining order freezing assets allegedly derived from Defendant’s fraud scheme, which 
the Court granted on May 7, 2015 [Doc. # 9]. The SEC then filed an amended complaint and 
motion for a preliminary injunction to freeze additional assets [Doc. ## 27, 29], naming the 
Relief Defendants in addition to Defendant. After an evidentiary hearing, the Court granted 
the preliminary injunction (“Asset Freeze Order”) [Doc. # 113], freezing Defendant and 
Relief Defendants’ assets appearing to consist of or have been purchased using illegally-
obtained funds. The Asset Freeze Order stated that 
 No person or entity, including the Defendant, Relief Defendants, 
 or any creditor or claimant against the Defendant or any of the 
 Relief Defendants, or any person acting on behalf of such 
 creditor or claimant, shall take any action to interfere with the 
 asset freeze, including, but not limited to, the filing of any 
 lawsuits, liens, or encumbrances, or bankruptcy cases to impact 
Id. the property and assets subject to this order. 

( at 21.) The Court subsequently granted the SEC’s summary judgment motion [Doc. # 
835] finding Defendant liable for violations of Sections 206(1)-(4) of the Advisers Act, 
 Ahmed v. 
SSEecCtion 10(b) of the Exchange Act, and Section 17(a)(1) of the Securities Act. See 
 , 308 F. Supp. 3d 628, 673 (D. Conn. 2018). 
 In 2018, the Court appointed a Receiver to manage and liquidate the Ahmeds’ frozen 
assets for the purpose of satisfying the judgment against Defendant. (Appointment Order 
[Doc. # 1070] at 5.) The Receivership Estate over which the ReceivIder had control was defined 
to include all of the assets subject to the Asset Freeze Order. ( . at 6.) The Appointment 
Order barred Defendant and Relief Defendants from 
 directly or indirectly taking any action or causing any action to 
 be taken, without the express written agreement of the 
 Re ceiver, which would: 

 a. Interfere with the Receiver's efforts to take possession, 
 custody or control of, or to manage, any assets of the 
 Receivership Estate; such prohibited actions include but are 
 not limited to, using self-help or executing or issuing or 
 causing the execution or issuance of any court attachment, 
 subpoena, replevin, execution, or other process for the 
 purpose of impounding or taking possession of or 
 interfering with or creating or enforcing a lien upon any 
 property of the Receivership Estate; . . . 

 c. Except with respect to authorized expenditures, dissipate or 
 otherwise diminish the value of any property of the 
 Receivership Estate; such prohibited actions include but are 
 not limited to, releasing claims or disposing, transferring, 
 exchanging, assigning or in any way conveying any property 
 of the Receivership Estate, enforcing judgments, 
 assessments or claims against the property of the 
 Receivership Estate, attempting to modify, cancel, terminate, 
 call, extinguish, revoke or accelerate (the due date), of any 
 lease, loan, mortgage, indebtedness, security agreement or 
 other agreement which affects the Receivership Estate; or, 

 d. Interfere with or harass the Receiver, or interfere in any 
 manner with the exclusive jurisdiction of this Court over the 
 Receivership Estate. 
Id. 
( at 12-13.) The Appointment Order also contained a provision staying “[a]ll civil legal 
proceedings of any nIda.ture . . . to obtain possession of property of the Receivership Estate, 
wherever located.” ( at 13.) 
 In January 2022, the Court approved the Receiver’s plan to liquidate Receivership 
Assets to satisfy the judgment. (Liquidation Order [Doc. # 2147] at 2.) The Court’s order 
stated that, consistent withI dth. e Court’s prior rulings, all Receivership Assets were available 
to satisfy the judgment. ( at 15-16.) The Court directed the Receiver to conduct the 
liquidation in twIod .phases, with Phase 1 liquidating non-unique assets and Phase 2 liquidating 
unique assets. ( at 5-6.) In December 2022, the Court approved the Receiver’s report on 
Phase 1 of the liquidation and directed the Receiver to begin Phase 2. (Phase 1 Approval 
 1 
Order [Doc. # 2395] at 1.) 
 Concurrent with the Court’s steps to secure and satisfy the judgment, in February 
2022, Ms. Ahmed filed a “notice” that she intended to commence dissolution of marriage 
proceedings, did not believe that the Court’s orders barred her from doing so, and would 
notify the state court of the Court’s orders. (Ms. Ahmed’s Notice [Doc. # 2195] at 1-2.) In May 
2022, the Receiver notified the Court of the Ahmeds’ “apparent failure to comply with the 
appointment order” by entering into a dissolution of marriage agreement (“dissolution 
agreement”) implicating Receivership Assets, in violation of the Court’s Orders. (Receiver’s 
First Notice [Doc. # 2248] at 2.) The agreement was signed on April 28, 2022, and obligated 
Defendant to pay Ms. Ahmed a lump sum alimony and child support payment of $87.7 
million. (Dissolution Agreement [Doc. # 2248-1] at 1.) AdditionIda.lly, the agreement stated 
that certain items of personal property belonged to Ms. Ahmed ( at 1-5.) and affirmed that 
Ms. Ahmed and the couple’s minor children held the title to any property titled to them or 
 United States Sec. & 
1Exch. Comm'n v. Ahmed 
 Nothing in the recent partial remand order by the Second Circuit in 
 , 72 F.4th 379(2d Cir. 2023) impacts the outcome of these contempt 
proceedings. 
for their benefit as of the day prior to the date the aids.set freeze commenced, and stated that 
the title or benefit determined legal ownership, ( at 8), contraveniSnEgC t hv.e A Chomuerdt’s prior 
findings that Relief Defendants were nominee owners of these assets. , 343 F. 
Supp. 3d 16, 31-38 (D. Conn. 2018). The Receiver’s notice explained that he would attempt 
to further investigate the dissolution agreement through discussions with the Ahmeds to 
ensure that the Receivership and Receivership assets would not be impacted. (Receiver’s 
First Notice at 12.) The basis for his concern was because Defendant has no known assets 
beyond those in the Receivership Estate, the agreement necessarily impacted Receivership 
Assets. 
 In July 2022, the Receiver filed a supplemental notice regarding the dissolution 
agreement. (Receiver’s Second Notice [Doc. # 2266].) He detailed his appearance in the state 
court to apprise that court of this Court’s orders and his decision to move to intervene inId t.he 
dissolution proceeding for the purpose of protecting the Receivership Estate’s assets. ( at 
2.) He also stated that he had attemIdp.ted to contact the Ahmeds on multiple occasions but 
had received no substantive reply. ( at 3.) 
 On November 15, 2022, the SEC moved for an Order to Show Cause why “Defendant 
Iftikar Ahmed and Relief Defendant Shalini Ahmed should not be held in civil contempt for 
their ongoing efforts to have another court enter a dissolution agreement related to their 
purported divorce that, by their own admission, has assigned and conveyed frozen assets 
and is interfering with the Receiver’s ability to liquidate assets frozen by this Court as well 
as the exclusive jurisdiction of this Court over those assets.” (Show Cause Motion at 1.) On 
April 13, 2023, the Court granted the SEC’s Show Cause Motion and ordered the Ahmeds to 
“show cause why they should not be held in contempt for seeking to obtain state court 
approval of their Dissolution Agreement.” (Show Cause Order [Doc. # 2471] at 6.) 
 On April 24, 2023, the state court granted the Receiver’s Motion to Intervene [Doc. 
No. 2498-2] (the “Memorandum of Decision”) holding that “the [R]eceiver’s interest is of a 
direct and immediate character, and that the disposition of this litigation and the effect of its 
judgment will impair the [R]eceiver’s interest without his involvement.” (Memorandum of 
Decision at 24.) The state court further stated that “the pleadings establish the [R]eceiver’s 
authority, as well as the District CIdourt’s exclusive jurisdiction, over the property at issue in 
this marital dissolution action.” ( . at 25-26.) 
 On June 12, 2023, the Ahmeds again moved in state court for entry of the Dissolution 
of Marriage Agreement as a judgment, and in the motion argued that “the marital estate 
includes well over $100 million in legitimate earnings and assets.” (Motion for Entry of 
Amended Agreement, Ex. G to the Receiver’s Resp. to Show Cause Order [Doc. # 2524] at 5.) 
Representing to the state court that “[t]here is nothing precluding th[e] [Dissolution of 
Marriage] [A]greement from being entered as judgment,” Ms. Ahmed articulated the need for 
the agreement to be entered so her family could receive certain financial support: “MS. 
AHMED: And – I’m sorry, Your Honor, but, you know, I have three little children at home. 
They really need the support. It’s not fair to them to keep this dragging on.” (Receiver’s Resp., 
Exhibit H at 5:4-16.) 
 The state court heard arguments from Ms. Ahmed and the Receiver on whether to 
enter the agreement and decided it would “defer hearing on the [Motion for Entry of 
Amended Agreement] until the time of trial and will render a decision on tIhde. motion after 
the conclusion of trial. Now, trial is scheduled for December 12th of 2023.” ( at 7:6-10.) 
 As noted above, on July 5, 2023, two days before the show cause hearing commenced, 
Ms. Ahmed notified the Court, the SEC and the Receiver that she had moved to withdraw her 
request to enter the marriage dissolution agreement [Doc. # 2534]. The motion was for 
withdrawal “without prejudice.” [Doc. # 2535-3]. The SEC and Receiver maintained that “the 
Court can and should still hear the issue of whether the Defendant and Ms. Ahmed should be 
sanctioned and ordered to pay the fees and expenses incurred by the Receiver related to the 
Dissolution Proceeding and his efforts to protect the assets of the Receivership Estate.” (Joint 
Notice at 2.) 
 II. Legal Standard 

 The CourtS hhailsli t“ainnhi evr. eUnnti pteodw Setra ttoes enforce compliance with [its] lawful orders through 
 2 
civil contempt.” , 384 U.S. 364, 370 (1966). A party may be held in 
civil contempt for failure to comply with a court order if “(1) the order the contemnor failed 
to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and 
convincinKg,i nagn dv. (A3ll)i etdh eV icsoionnte, Lmtdnor has not diligently attempted to comply in a reasonable 
manner.” ., 65 F.3d 1051, 1058 (2d Cir. 1995). With regard to the first 
element, an order is clear and unambiguous if it is “specific aNnd.Y .d Setfainteit Ne aetn'lo Ourggh. ftoor aWpopmriesne 
tvh. oTseer wryithin its scope of the conduct that is being proscribed.” 
 , 886 F.2d 1339, 1352 (2d Cir. 1989). As to the secondLa etilnemo Oenfftic, etrhse A bssu'nrd oef nC iotyf 
eosf tNab.Yl.i,s hIninc.g v c.o Cnitteym opf tNu.oYus conduct is borne by the moving party, 
 ., 558 F.3d 159, 164 (2d Cir. 2009), and “[i]n the context of civil 
contempt, the clear and convincing standard requires a quanLteuvmin vo.f T pibreoro fH oalddeinqgu aCtoer pto 
demonstrate a reasonable certainty that a violation occurred,” ., 
277 F.3d 243, 250 (2d Cir. 2002). HowDevoenro,v tahne vp. aSrotvye rseeiegkni nSge ct.h Let dcontempt order need not 
establish that the violation was willful. ., 726 F.2d 55, 59 (2d Cir. 
1984). 
 “Unlike sentences for criminal contempt, which are punitive in nature and intended 
to vindicate the authority of the court, the sanctions for civil contempt serve two purposes: 
to coercWe feuittuzmrea cno mv.p Slitaenince and to remedy any harm past noncompliance caused the other 
party.” , 98 F.3d 717, 719 (2d Cir. 1996). The Second Circuit “has 
commented that, so far as th e first of these functions is concerned, the district judge, sitting 
2 
in equity, is vested with wide discretion in fashioning a remedy. The compensatory goal, by 
contrast, can only be met by awarding to the plaintiff any proven damages. The district cIodu. rt 
in either case may award appropriate attorney fees and costs to a victim of contempt.” 
 “When deciding whether to award fees, courts have focused on the willfulness of the 
contemnor's misconduct.…Thus, while willfulness may not necessarily be a prerequisite to 
an award of fees and costs, a finding of willfulness strongly supports granting them. Indeed, 
to survive review in this court, a district court, having found willful contempt, would need to 
articulate persuasive grounIdds. for any denial of compensation for the reasonable legal costs 
of the victim of contempt.” This is so because “the discretion of the district court is more 
narrowly bounded when seeking to compensate the victim of contempt, and cIodr.3respondingly 
broaIIdIe. r whDeinsc iut ssseieokns to force prospective compliance with its own order.” 
 A. Contempt on the Merits 
 a. Failure to Comply with Court Orders 

 Paragraph 19(d) of the Appointment Order states that the Defendant and Ms. Ahmed 
may not take actions which would “[i]nterfere with or harass the Receiver, or interfere in 
any manner with the exclusive jurisdiction of this Court over the Receivership Estate.” 

3 
 Ms. Ahmed argues that, even if she were found in contempt, the Court cannot award fees, 
because she does not have the funds to pay such an award. (Ms. Ahmed’s Br. at 24.) While 
Ms. Ahmed testified that she lacked access to funds beyond those allotted to her by the Court 
for monthly expenses, the Court did not find her testimony entirely credible. She admitted 
that she travels frequently to India with her children aged 11, 15 and 16 to see their father, 
who remains a fugitive there, and their plane tickets and lodging are paid for by friends of 
Mr. Ahmed, whose full names Ms. Ahmed claims not to know. (Transcript of July 7, 2023 
Hearing (“Hearing Tr.”) [Doc. # 2549] at 50:18-5I3d:.11; 65:5-67:16.) Ms. Ahmed also admits 
to having hundreds of thousands of dollars in tuition for her children’s private schooling paid 
for by a benefactor whom she refused to name. ( at 54:5-58:10.) The significant financial 
assistance Ms. Ahmed admits to having received, and her unwillingness to provide any 
details about why and how these individuals came to provide such substantial financial 
Paragraph 19(a) states that the Ahmeds may not [i]nterfere with the Receiver’s efforts to 
take possession, custody or control of, or to manage, any assets of the Receivership Estate… 
include[ing] but… not limited to…executing or issuing or causing the execution or issuance 
of any court attachments…, execution, or other process for the purpose of… taking 
possession of or interfering with or creating or enforcing a lien upon any property of the 
Receivership Estate.” The Receiver observes that the Ahmeds “could have gotten divorced 
without implicating Receivership Assets” but chose to do so in a manner disruptive to those 
assets. (Receiver’s Resp. at 18.) He pointSse eto Ms. Ahmed’s repeated representations that she 
sought to engage in such interference. Receiver’s Resp. Ex. I, Ms. Shalini Ahmed’s Pre-
Hearing Brief for Case Date on June 12, 2023, at 11 (arguing that the state court should grant 
the Motion for Entry of Amended Agreement, because: “Ms. Ahmed requires a judgment to 
ensure that she and the three minor children are able to receive the domestic support 
obligations that tsheeey a alsroe entitled to receive, that they are in need of, and that Mr. Ahmed 
must provide.”); Ms. Ahmed’s Response, at 26 (arguing that if the Defendant “does 
not have enough assets to satisfy his obligations [under the Agreement], then…” the SEC must 
“simply… share with other creditors,” namely, Ms. Ahmed herself, “on an equal basis.”) At the 
show cause hearing, Ms. Ahmed testified that her intention following the dissolution 
agreement being entered was “to bring whatever judgment was there to this court for 
enforcement or leave to enforce against the [frozen] assets” and to ask this Court “to consider 
the priority status” of her claim against those assets. (Transcript of July 7, 2023 Hearing 
(“Hearing Tr.”) [Doc. # 2549] at 96:16–98:23.) 
 Paragraph 19(c) of the Appointment Order states that the Defendant and Relief 
Defendants may not take actions which would “dissipate, or otherwise diminish the value of 
any property of the Receivership Estate… includ[ing] but… not limited to… assigning or in 
any way conveying any property of the Receivership Estate….” The Receiver argues this 
provision would be violated by the dissolution agreement because it requires a payment of 
a lump sum alimony and child support payment on the date of the agreement, and also that 
the agreement states that the Ahmeds “agree that the title to property shall remain as on 05 
May 2015,” the day prior to the Freeze Order, “regardless of any sub. sequent transfer of any 
asset(s) by any Receiver on or after 06 May 2015.” (Receiver’s Resp at 20, citing Dissolution 
Agreement at 8.) The Receiver argues the Ahmeds violated the Appointment Order ¶ 22 and 
Freeze OIdr.der ¶ D, which stay legal proceedings related to property of the Receivership 
Estate. ( at 21-22.) 
 The Receiver argues that an entry of the dissolution agreement would also hinder his 
execution of his duties because it “would, among other things, enable the Ahmeds (i) to 
argue, albeit incorrectly, to the Receiver, to this Court and to other courts that this Court’s 
exclusive jurisdiction over and prior adjudications concerning Receivership Assets have 
been supplanted by the Agreement and the Dissolution Proceeding; and (ii) to demand, 
albeit, again, incorrectly, to third-parties that they honor the Agreement and permit the 
Ahmeds control over certain Receivership Assets.” (Receiver’s Br. Regarding Impact of 
Dissolution Agreement [Doc. # 2499].) The Receiver maintains that even though such 
arguments by the Ahmeds are without merit, their assertions would be disruptive as it would 
require the ReceSievee ri dt.o respond to such arguments and the ensuing legal proceedings will 
result in delay. ( at 2-3.) For example, the Receiver argues that if the agreement were 
approved, then Mr. Ahmed’s failure to comply with his obligations under the dissolution 
agreement would make available to Ms. Ahmed certain post-judgment enforcement tools 
that would allow her “to serve certain financial institutions with state court executions 
requiring the turnover of Receivership Assets to her or to serve certain business entities 
within the Receivership Estate with a charging order which would divert sale proceeds to 
herself instead of the Receiver,” thus leading to interference with the Receiver’s duties. 
(Receiver’s Resp. at 20.) 
 The Asset Freeze Order and Appointment Order unambiguously prohibited attempts 
to interfere and/or change ownership of assets in the Receivership Estate and interfere with 
the Court’s jurisdiction over the Receivership Estate. (Asset Freeze Order at 21; Appointment 
Order at 12-13.) From the record, it is evident that prior to withdrawing the motion to enter 
the dissolution agreement, the Ahmeds were embarked on a scheme in co nnection with their 
divorce that wbo.u ldD illiikgeelyn tv iCoolamtep tlhiaen Ccoeu rt’s orders if it came to fruition.

 As evidence of the Ahmeds’ lack of diligence in complying with the Court’s orders, the 
Receiver argues .t hat the Ahmeds have attempted to use subterfuge to evade compliance. 
(Receiver’s Resp aaftt 2er2-23.) He notes that the Ahmeds pushed for exIpde.dited approval of the 
 4 
agreement, even this Court issued an order to Show Cause. ( at 24.) The Receiver 
notes that “the Ahmeds’ concerted efforts to get the Agreement entered as a judgment 
despite, inter alia, this Court ordering the Ahmeds to show cause why they should not be 
held in contempt for seekinIgd .to do just that, evidences an intent to violate the Freeze Order 
and Appointment Order.” ( at 25.) Now, of course, Ms. Ahmed has withdrawn the motion 
to enter that dissolution agreement. However, Ms. Ahmed waited until the last possible 
moment to withdraw it prior to the hearing, claiming she is withdrawing only because she 
was denBi.e dM founodtns efossr ocof uCnosnetle. (mEpx.t 1 to Ms. Ahmed’s Mot. to Cancel [Doc. # 2535-1].) 
 Regardless of the merits of the contempt dispute, Ms. Ahmed argues that because she 
voluntarily withdrew her request to enter the dissolution agreement prior to the show cause 
hearing, the contempt issue is moot and no sanctions are appropriate. (Ms. Ahmed’s Reply 
on Cancellation [Doc. # 2539] at 2-3.) In the SEC’s initial Motion to Order the Ahmeds to Show 

4 
 The Receiver also sent emails to Ms. Ahmed inquiring about her intentions and warning her 
Cause, it requested the Court to “order Mr. and Ms. Ahmed to pay, on a joint and several basis, 
a rising daily fine until the contempt is purged by withdrawing their request that the divorce 
court enter the Dissolution Agreement or otherwise divvy up or assign assets subject to the 
asset freeze and within the Receivership Estate.” (Show Cause Motion at 4.) It is clear that 
the AhmeSdese , hea.gv.,eU nnoitwed p Srtea-teems vp. tIinvte'll yB hpdu.r ogfe Tde tahmesmtesresl,v Cehsa ouff faenuyrs p, Wotaernethiaolulys ecmoennte &m Hpetulpoeurss 
coof nAdmu.c, tA. FL-CIO aff'd sub nom. United States v. Int'l Bhd. of 
Teamsters, Chau, f7fe4u3r sF, .W Suarpeph. o1u5s5e,m 1e6n7 & ( SH.Del.pNe.rYs. )o, f Am AFL-CIO
 ., , 905 F.2d 610 (2d Cir. 1990) 
(finding that because the contemnor purged himself of all contempt, “the remaining issues 
involved in the contempt charges became moot.”). 
 Nonetheless, the SEC maintains that the Court should find that the Ahmeds “violated 
Orders of this Court and sanctionB tohoet hA hvm. Wedilsso bny ordering them to pay [] fees and expenses.” 
(SEC’s Post-hearing Br. at 1.) In , No. 96 CIV. 920 (RO), 1997 WL 615490, at 
*3 (S.D.N.Y. Oct. 6, 1997), the alleged contemnor no longer had any contemptuous conduct 
to purge because the offending conduct (a bankruptcyI dp.roceeding she initiated in defiance 
of a court order) had been stayed by the district court. at *2-3. Despite this development, 
the court still held the Defendant in contempt and found it appropriate to award attorney’s 
fees because “[c]ivil contempt sanctions can also be compensatory, “restorI[din. g] the qpuaorttiinegs 
tVou tithteo np oest iFtiiolsn S t.hAe. yv .w Coauroldu sheal vHea hnedlbda hgasd the [court's order] been obeyed.” at *3 (
 , 592 F.2d 126, 130 (2d Cir. 1979)). The Court finds 
some distinction between here, where the Ahmeds voluntarily withdrew the pending motion 
to enter the dissolution agreement, in contrast to Defendant Wilson, whose contempt w as 
only eliminated by the external decision of the court to stay the bankruptcy proceeding. 
 At tVhuei tstohno wet cFaiulss Se. hAe.aring, the SEC cited, in support of the remedial nature of 
contempt, , 592 F.2d at 130, where the Second Circuit remanded to the 
district court directing that “if Judge Brieant concludes that any of the defendants had actual 
notice of the injunction, acted in concert with Carousel, and is in contempt because of a 
violation of the termVsu oitft othne decree, Vuitton should be afforded an opportunity to prove its 
damages.” Neither nor the Receiver’s cases in vhoilsu nptoasrti-lhy ecaeraisnegd bberifeofr ei nav foinlvdein ga 
soift ucoantitoenm wpth weraes t ihsesu aeldle, gaenddl yb ceofonrtee mthpet auloleugse cdolny dcuocntt ewmapst uous scheme came to fruition See
Perfect Fit Indus., Inc. v. Acme Quilting Co . 
 ., 673 F.2d 53, 56 (2d Cir. 1982) (affirming a finding 
of civil contempt which “imposed [a] continWgeenitt zfminaen in order to compel [the contemnor] to 
comply with the court's injunctive orders”); ,98 F.3d at 719 (awarding fees where 
the contemnor was an attorney who was found in contempt for having improperly interfered 
with a court-ordered saleJa oegf ear vc.a Mr, awsshisere the attorney’s actions successfully led to the 
 5 
cancellation of the sale) ; , 234 F.3d 1262 (2d Cir. 2000) (affirming a finding 
of contempt for defendant who had been continuously distributing fliers in violation of a 
temporary restraining order). 
 Given that Ms. Ahmed renewed her moteiovenn taof thera vteh et hOer dsetra tteo Schoouwrt Ceanutseer wthaes 
iDssisuseodlution of Marriage Agreement as judgment 
 , the Ahmeds may very well have been engaged in a scheme that would have subverted 
the Court’s orders if the dissolution agreement had been entered as a judgment in state court, 
potentially “impact[ing] the property and assets subject to this order,” (Asset Freeze Order 
at 21), “[i]nterfer[ing] with the Receiver’s efforts to…manage…the Receivership Estate” 
and/or “dissipate[ing] or otherwise diminish[ing] the value” of the Receivership Estate. 
(Appointment Order at 12-13.) However, regardless of the Ahmeds’ motives, the motion to 
enter the dissolution agreement has been voluntarily withdrawn, and so the Court declines 

 Weitzman 
5 
 As background, in the courthad issued an order directing the seizure and sale of 
the car in question, and prohibiting interference with that sale by the defendant or her 
representatives. Defendant’s lawyer “delivered a letter tWo tehitez Smhaenr ivff. Sthteaitn caused the Sheriff 
to cancel the sale of the Lvianccaotlend t hoant o wthaesr s gchroeudnudlesd to occur on the following day.” As a result, 
to exercise its contempt power, nor does the Court find that the circumstances warrant the 
 6 
awarding of the Receiver’s fees, which will be paid for by the Receivership Estate. 
 II. Conclusion 
 For the foregoing reasons, the Court de clines to take action against Defendant Iftikar 
 7 
Ahmed and Relief Defendant Shalini Ahmed. 

 IT IS SO ORDERED. 

 _____________/s/_____________________ 
 Janet Bond Arterton, U.S.D.J. 
 Dated at New Haven, Connecticut this 4th day of August , 2023 

6 
 This is not to say that a party can never be subject to fees or damages even when a party 
voluntarily ceases its contemptuous conduct prior to a show cause hearing. Such a rule could 
allow for manipulation of the courts by allowing a party to engage in wanton violations of 
judicial orders only to cease their violations on the eve of judicial comeuppance. 
7 
 Ms. Ahmed’s motion to withdraw the Dissolution Agreement was made “without prejudice,” 
[Doc. # 2535-3], and the Court warns that any effort by Mr. or Ms. Ahmed to revive the 
dissolution agreement as written or enter a similar dissolution agreement that violates the